In re Victor B. SMITHER, Debtor.

Bankruptcy Nos. 94–33743(1)7, 95–3018 and 95–3043.

United States Bankruptcy Court, W.D. Kentucky.

Feb. 27, 1996.

Gregory Clare, Louisville, KY, for Debtor.

Alan Slyn, Louis Nicoulin, Louisville, KY, for Creditor.

## MEMORANDUM OPINION

HENRY H. DICKINSON, Chief Judge.

Today we make our contribution to the small but growing body of caselaw interpreting 11 U.S.C. § 523(a)(15). The Court, in this case and in an opinion in the case of *Hibbard v. Hibbard,* AP No. 95–3044, will discuss this new exception to the bankruptcy discharge in some detail. Here, Joan Smither ("Creditor"), Victor Smither's ("Debtor") former spouse, is suing under 11 U.S.C. § 523(a)(5) and (15) to have two obligations rendered nondischargeable.

### Factual Background

The factual background of the Smithers' marriage and divorce are set forth in the state court's judgment of November 23, 1993, ("State Court Judgment"), a copy of which is attached hereto as Exhibit A and these findings are incorporated herein by reference. This opinion, which was affirmed by the Kentucky Court of Appeals, was the state court culmination of a bitter and hotly contested divorce. While the State Court Judgment addressed numerous issues in the parties' divorce, only two unresolved matters remain pending for consideration in this Court:

1. Whether the Creditor's attorney fees in the amount of $13,168.00 plus interest, which the Debtor was required to pay on behalf of his former spouse are nondischargeable under either 11 U.S.C. § 523(a)(5) or 11 U.S.C. § 523(a)(15); and

2. Whether the "equalization of marital property" award, in the amount of $2,994.00 plus interest was nondischargeable under 11 U.S.C. § 523(a)(15).

At the time of Debtor's bankruptcy filing on December 14, 1994, the circumstances of both parties had changed from the filing of their divorce. Both the Debtor and Creditor had remarried. The Debtor and his new wife had a combined income of $122,692, with the Debtor earning $71,175.92, plus a manager incentive bonus of $12,060.00 which netted the Debtor approximately $8,000.00 after taxes. In his schedule of income, the Debtor

stated that he had monthly gross income of $5,025.00 and a net take home pay after taxes of $3,400.00. No evidence of the Debtor's spouses' monthly income was introduced at trial.

Since the divorce, the Creditor has voluntarily left her approximately $23,000.00 per year job and had returned to college to further her education. The Creditor testified that she and her present husband have a combined annual income of between $40,-000.00 and $50,000.00, not including the $1,465.00 per month she receives from the Debtor as child support.

Both parties have also presented some evidence as to their expenses. The Debtor, in his bankruptcy petition's schedules of expenses, listed expenses of $4,289.70 per month. These expenses included $1,965.00 in alimony and child support, $419.00 in mortgage payments on the home owned solely by his current wife, $300.00 per month in credit card payments which have not been reaffirmed and $225.00 in legal fees which he estimates he will continue to accrue on an ongoing basis. The Court notes that the debtor is no longer obligated to pay the $500.00 monthly alimony listed in his schedules to the Creditor due to her remarriage. Many of the Debtor's expenses are estimated by dividing his household's expenses in half. Further, under the terms of a November 30, 1994 State Court order issued in connection with the parties divorce proceedings, the Debtor must pay $1,500.00 per month on the Creditor's state court attorney fees. The debtor is currently not paying this obligation pending this court's determination of its dischargability. This monthly expense is not listed on the Debtor's statement of financial affairs.

The Creditor presented a list of the monthly expenses for her family of $3939.48, not including tithing to her church of $662.00 per month and $41.58 per month in other charitable contributions.

*Legal Analysis*

**I.) 11 U.S.C. § 523(a)(5)**

█ Initially this Court must address the question of whether the Debtor's obligation for the Creditor's attorney fees and costs is nondischargeable under 11 U.S.C. § 523(a)(5). Under this provision, a debt is nondischargeable if:

1) it is owed to a spouse, former spouse or child of the debtor;

2) it has *not* been assigned to another entity, except pursuant to section 402 of the Social Security Act;

3) it arose in connection with a divorce decree, separation agreement, property settlement agreement, order of a court of record or determination made by a governmental unit with state or territorial law; and

4) it is "in the nature of alimony, maintenance or support".

*See Fitzgerald v. Fitzgerald*, 9 F.3d 517 (6th Cir.1993); *Long v. Calhoun*, 715 F.2d 1103 (6th Cir.1983).

Here, from reviewing the facts of this case, it is clear under either the *Fitzgerald* or *Calhoun* doctrines that the Debtor's obligation for the Creditor's state court attorney fees meets the four part test of 11 U.S.C. § 523(a)(5) and is nondischargeable. The state court clearly intended the award to be in the nature of support. The award has the effect of providing actual necessary support to the Debtor given her then annual earnings of approximately $23,000 per year and is not manifestly unreasonable. *See Calhoun*, 715 F.2d at 1110. Therefore we do not need to analyze the dischargeability of this obligation under 11 U.S.C. § 523(a)(15).

**II.) 11 U.S.C. § 523(a)(15)**

For over 150 years, under various Bankruptcy Acts, the dischargeability of debts arising from a divorce, dissolution or separation agreement (hereinafter "marital obligation") has been based on whether a marital obligation was in the nature of alimony or support or was a division of property. *See Hawes v. Cooksey*, 13 Ohio 242 (1844) (child support not dischargeable under Bankruptcy Act of 1840). Judge Mannes, in the case of *In re Hesson*, 190 B.R. 229 (Bkrtcy.D.Md. 1995), has noted that the problems caused by determining the dischargeability of marital obligations solely on the basis of whether a debt is in the nature of alimony, maintenance

and support has resulted in massive litigation and some unjust hardship on nonfiling spouses.

In October of 1994, in a response to the perceived problems with this system, Congress passed 11 U.S.C. § 523(a)(15). While clearly passed with the best and most noble of intentions, this piece of legislation has been described by two of my fellow judges as sausage. *In re Hesson*, 190 B.R. at 237, *quoting, In re Butler*, 186 B.R. 371, 373–75 (Bkrtcy.D.Vt.1995). This Court, borrowing from another wise saying, believes that this statute may be better described as a paving stone on the road to the region of Hades reserved for litigation nightmares.

The reasoning behind this observation starts with a reading of this statute:

[11 U.S.C. § 523(a) ] A discharge [under Chapter 7] . . . does not discharge an individual debtor from any debt . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

The cumbersome wording of this piece of legislation makes it difficult to interpret on a number of levels. Moreover, its interrelation with the remainder of the Bankruptcy Code raises numerous unresolved issues concerning its implementation. We will attempt to address these issues, in detail, when applying (a)(15), to the facts of this case.

### A. Jurisdiction

■ One of the smallest, but most important amendments made in connection with Section 523(a)(15) was the addition of Section (a)(15) to the provisions 11 U.S.C. § 523(c)(1). This change has the effect of granting Federal Courts *exclusive* jurisdiction over 11 U.S.C. § 523(a)(15) actions. Unlike 11 U.S.C. § 523(a)(5) actions where both State and Federal Courts have jurisdiction to determine the dischargeability of an obligation which is in the nature of alimony, maintenance or support, State Courts have no power to determine the dischargeability of debts under this new provision of the Bankruptcy Code. *See In re Hesson*, 190 B.R. at 236 (Bkrtcy.D.Md.1995).

### B. Time Limits for Filing 11 U.S.C. § 523(a)(15) Actions

■ Bankruptcy Rule of Procedure (BRP) 4007(c) fixes the time for filing a complaint under 11 U.S.C. § 523(a)(15) as "not later than 60 days following *the first date set* for the meeting of Creditors held pursuant to § 341(a) [of the Bankruptcy Code]". This time period may be extended for cause during the initial 60 day period or any extension thereof. BRP 4007(c); *In re Alton*, 837 F.2d 457 (11th Cir.1988). Motions for extensions of time filed after the filing deadline has passed are granted only in the rarest of circumstances. *See In re Isaacman*, 26 F.3d 629 (6th Cir.1994).

In this case, a complaint pursuant to 11 U.S.C. § 523(a)(5) was timely filed by the Debtor on February 14, 1995, well before the March 28, 1995 deadline. This action was later consolidated with the Creditor's 11 U.S.C. § 523(a)(15) complaint which was filed on March 27, 1995.

### C. Burden of Proof

■ One of the most litigated issues to date in the context of 11 U.S.C. § 523(a)(15) nondischargeability complaint concerns which party, the Debtor or Creditor, bears the burden of proving the elements of this exception to discharge. As a general rule, creditors bear the burden of proof, by a preponderance of the evidence, on all elements of a particular statutory exception to

discharge under 11 U.S.C. § 523. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See also In re Butler,* 186 B.R. 371 (Bkrtcy.D.Vt.1995); *Carter v. Carter,* 189 B.R. 521 (Bkrtcy.M.D.Fla.1995).

■ However, 11 U.S.C. § 523(a)(15) is written in a similar manner to 11 U.S.C. § 523(a)(8), which provides that certain debts, which qualify as student loans, are nondischargeable unless the Debtor can establish certain statutory defenses. *In re Burton,* 117 B.R. 167 (Bkrtcy.W.D.Pa.1990); *In re Ealy,* 78 B.R. 897 (Bkrtcy.C.D.Ill.1987). The majority of courts, including this Court in *In re Patterson,* Case No. 95–32550(3)7, AP No. 95–3139 (Bkrtcy.W.D.Ky.1996), have ruled that a Creditor filing an 11 U.S.C. § 523(a)(15) complaint *only* has the burden of proving that: 1) the debt is not a debt which is nondischargeable under 11 U.S.C. § 523(a)(5); and 2) the debt was incurred "in the course of divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with state or territorial law by a governmental unit...." in crder for it to be nondischargeable under 11 U.S.C. § 523(a)(15).

■ If the objecting creditor meets this burden of proof, then the burden shifts to the debtor who must either prove an inability to pay the debt under § 523(a)(15)(A) or that a discharge of the debt would result in a benefit to the debtor that outweighs the detrimental consequences of a discharge to the spouse, former spouse or children of the debtor under § 523(a)(15)(B). *In re Carroll,* 187 B.R. 197, 200 (Bkrtcy.S.D.Ohio 1995); *In re Phillips,* 187 B.R. 363 (Bkrtcy.M.D.Fla. 1995); *In re Florio,* 187 B.R. 654 (Bkrtcy. W.D.Mo.1995); *In re Becker,* 185 B.R. 883 (Bkrtcy.N.D.Cal.1995). It is important to note that both the debtor and creditor will have to present evidence under Section 523(a)(15)(B) concerning the consequences of the discharge on the respective parties. *In re Patterson,* AP No. 95–3139 at p. 2. *See also In re Florez,* 191 B.R. 112 (Bkrtcy. N.D.Ill.1995) (Debt was nondischargable under section 523(a)(15) where the debtor had the ability to pay the obligation and present-

ed no evidence under subsection (B) as to the debt's dischargability).

In this case, the Creditor has easily met her burden of proof under 11 U.S.C. § 523(a)(15) and therefore the burden of proof has shifted to the Debtor to establish his entitlement to a discharge under either subsection (A) or (B) of Section 523(a)(15).

#### D. Applicable Date for Measurement of Ability to Pay and Impact of Discharge

■ As insightfully noted by the *Hesson* Court, one of the most important issues under Section 523(a)(15) is what time period a court should use in determining the Debtor's ability to pay. Although one Court has established this date as the filing of the Section 523(a)(15) complaint, *In re Hill,* 184 B.R. 750 (Bkrtcy.N.D.Ill.1995), this Court agrees with the *Hesson* court that the date of trial is the appropriate starting point for making these determinations. As explained by the *Hesson* court:

> This is not a historical search, but as with a student loan inquiry under § 523(a)(8) is an examination of current circumstances. For example, after the filing of the case, either party might have sustained a disabling injury or may have won the lottery, or have experienced a substantial change in earnings. Post-filing events could easily affect either debtor's ability to pay the debt or the balance between debtor's benefit from discharge and the detrimental consequences of discharge to the recipient. Use of a time substantially before the trial date could produce a silly result that mocks congressional intent.
>
> *In re Hesson,* 190 B.R. at 237.

Nevertheless, this Court's inquiry in this matter is not controlled by mere "snapshot" of the debtor's financial strength as of a single moment in time. Rather, this inquiry must allow a court to consider the debtor's *prospective* earning ability. Unlike Chapter 13 cases where, if a debtor's finances improve or deteriorate, plan payments can be adjusted over the term of the plan, the court has no ability to revisit a debtor's financial circumstances after the conclusion of the trial on

the 11 U.S.C. § 523(a)(15) issues. Given the relative ease with which a party could manipulate an inquiry based upon any single moment in time, cases under 11 U.S.C. § 523(a)(15) would be decided solely upon the timing of the filing of the bankruptcy and required complaint, unless a court can weigh the debtor's earning potential. We therefore hold that a Court may consider facts and circumstances concerning a debtor's future earning potential, as well as his or her income as of the date of the trial of the 11 U.S.C. § 523(a)(15) action in determining his ability to pay.

### E. Ability to Pay Under 11 U.S.C. § 523(a)(15)

■ Initially, this Court must first determine whether the Debtor has the ability to pay the obligation in question from property owned by the Debtor after the bankruptcy filing or future income under 11 U.S.C. § 523(a)(15)(A). In making this determination the Court must undertake a four-step analysis of the obligation(s) in question as well as consider the Debtor's general fiscal status to see if the Debtor has the ability to pay.

First, the Court will have to determine the amount of the debts which a Creditor is seeking to have held nondischargeable and the repayment terms and conditions of those debts.

Second, the Court will have to calculate the Debtor's current income and the value and nature of any property which the Debtor retained after his bankruptcy filing.

Third, the Court will have to ascertain the amount of reasonable and necessary expenses which the debtor must incur for the support of the Debtor, the Debtor's dependents and the continuation, preservation and operation of the Debtor's business, if any.

Finally, the Court must compare the Debtor's property and current income with his reasonable and necessary expenses to see whether the Debtor has the ability to pay these obligations.

■ Here, this Court finds that the obligation in question is $2,994.00 plus 12% interest from November 24, 1994. There are no specific repayment terms on this obligation other than the original award by the state court.

■ Next, the Court must calculate the Debtor's income and post-petition property. In determining the amount of income which a Debtor earns for purposes of the 11 U.S.C. § 523(a)(15) tests, courts should look to the well-developed caselaw under 11 U.S.C. § 1325(b)(2) which governs the determination of what constitutes "disposable income" for the purposes of confirming a Chapter 13 plan. The wording of the two sections of the Bankruptcy Code are virtually identical and courts which have considered this question of determining a debtor's income for purposes of Section 523(a)(15) have adopted the "disposable income" test case law of 11 U.S.C. § 1325(b). *See In re Hesson*, 190 B.R. at 236.

This Court finds that the Debtor's current annual gross income is approximately $80,000.00 including his annual bonus. This works out to an average gross monthly income of $6,667.00 with an approximate monthly take home pay of $4,000.00, adopting a 40% tax rate to be used in determining the Debtor's net take home pay. This amount seems to be a reasonable approximation of the income which the debtor can expect to earn in the near future given the evidence which was presented to the court.

■ However, the Debtor is currently married and the combined annual gross income of the Debtor and his present spouse is $122,000.00. This fact is important as we hold that where a debtor has remarried prior to the trial of the 11 U.S.C. § 523(a)(15) action, his or her spouse's income should be included in the calculation of the debtor's disposable income. The majority of Chapter 13 cases discussing the concept of disposable income have reached the same conclusion, as well as the sole 11 U.S.C. § 523(a)(15) case addressing with that issue. *See In re Comisky*, 183 B.R. 883 (Bkrtcy.N.D.Cal.1995) (11 U.S.C. § 523(a)(15) case); *Matter of Belt*, 106 B.R. 553 (Bkrtcy.N.D.Ind.1989); *In re Strong*, 84 B.R. 541 (Bkrtcy.N.D.Ind.1988); *In re Kern*, 40 B.R. 26 (Bkrtcy.S.D.N.Y. 1984).

In the present case, there is no evidence that the Debtor has any assets from which to pay this property settlement. However, in cases where a debtor's assets may be an issue, 11 U.S.C. § 522(a)(10), governing whether a debtor may exempt assets under the Federal exemption scheme, and the case of *In re Flygstad,* 56 B.R. 884 (Bkrtcy. N.D.Iowa 1986) may provide some guidance. This Court expressly reserves the question of whether a nonfiling spouse's *assets,* as opposed to income, may be considered under 11 U.S.C. § 523(a)(15)(A).

 Third, we must calculate the amount of the Debtor's reasonable expenses. As with income this calculation must include the reasonable living expenses of the Debtor's spouse and other dependents. The Court finds, on rather scant evidence, that the reasonable monthly expenses of the Debtor's household are as follows:

| | |
|---|---:|
| Mortgage [Home in Wife's Name] | $ 838.00 |
| Utilities & Phone | 200.00 |
| Food | 400.00 |
| Clothing | 300.00 |
| Laundry | 193.00 |
| Medical Expenses | 80.00 |
| Transportation | 170.00 |
| Recreation | 100.00 |
| Charitable Contributions | 40.00 |
| Auto Payments | 398.80 |
| Alimony Maintenance and Child Support Monthly Support Payments | 1,465.00 |
| Nondischargeable Attorney fees under 523(a)(5) | 1,500.00 |
| Total | $5,684.80 |

 The Court arrived at these figures by doubling the amounts of the Debtor's expenses, except for his car, and child support payments. The Debtor testified that he divided his household's joint expenses by 2 to obtain the entries for his schedule of current expenses in his bankruptcy petition. The court also deducted $533.40 from the debtor's calculation of his expenses reflecting his monthly credit card bills and attorney fees as there was no proof the debtor would continue to incur these expenses after he received his bankruptcy discharge. Although, it is not necessary for the resolution of this case, this Court notes that some of the debtor's expenses would probably be more closely reviewed in a case where the debtor claimed he did not have sufficient income to meet his obligations. Further, the Court notes that as with a debtor's income, the Court may consider evidence of probable changes in a debtor's expenses in considering an 11 U.S.C. § 523(a)(15)(A) defense.

When comparing these expenses against the Debtor's after tax household monthly household income of $6,100.00 ($122,000 annual income ÷ 12 × .60 [percentage of after tax income]) we find that the Debtor's household is left with an approximate $415.00 surplus per month with which to pay this debt. The question then becomes, is this monthly excess sufficient to pay his $3,500 + debt to his former spouse. The answer to this question turns upon how strictly 11 U.S.C. § 523(a)(15)(A) is interpreted.

### F. How Much to Discharge?

One of the great unresolved issues of § 523(a)(15) is whether a debt can be partially discharged, or otherwise equitably modified under this section. In the present case, since the obligation is apparently due immediately under the terms of the State Court Judgment, a mechanical reading of this statute could result in the discharge of this obligation since the Debtor cannot pay it, in full, from his presently available excess income and assets. This Court expressly rejects the argument that a harsh "all or nothing" result is mandated by § 523(a)(15). Such a mechanical reading of this provision of the Bankruptcy Code is clearly contrary to dictates of reasonable statutory interpretation as well as 11 U.S.C. § 523(a)(15)'s legislative history. By the same logic, a mere mathematical possibility that a debt could be paid in full over many years due to the existence of a small amount of excess income in relation to the (a)(15) debt in question is also not the correct interpretation of this law.

 There is however, a middle ground. This Court shall join the *Comisky* court and adopt the flexible discharge approach of 11 U.S.C. § 523(a)(8) cases, which hold that courts may grant *partial* discharges of student loans, as well as make other equitable modifications of (a)(8) debts, for cases under 11 U.S.C. § 523(a)(15). *See In re Comisky,* 183 B.R. at 884 (debt partially discharged where debtor could only pay $10,000.00 of the $25,000.00 over a reasonable period of time). *See Also, In re Ghessman,* 25 F.3d 356 (6th

Cir.1994) (equitable modifications approved as opposed to absolute discharge determination in cases under 11 U.S.C. § 523(a)(8). We find that *Ghessman*'s analysis of 11 U.S.C. § 523(a)(8) is equally applicable to section 523(a)(15).

Accordingly, this Court holds that a Debtor has the ability to pay an obligation, for purposes of 11 U.S.C. § 523(a)(15)(A), if the Debtor has sufficient disposable income to pay all or a material part of a debt within a reasonable amount of time. If the Debtor has the ability to pay only a portion of that indebtedness, then the court may discharge in part and/or equitably modify the obligation in question. This analysis must be applied on a-case by-case basis after a careful review of the particular facts and circumstances surrounding each nondischargeability action. The application of this standard in the present case must, however, be deferred until the Court considers whether the debt in question is nondischargeable under 11 U.S.C. § 523(a)(15)(B).

### G. 11 U.S.C. § 523(a)(15)(B): Balancing of Hardships

Even if a debtor has the ability to pay a *property settlement debt* for purposes of 11 U.S.C. § 523(a)(15)(A), the Debtor may still obtain a discharge of the obligation if the Debtor can prove, by a preponderance of the evidence, that "discharging such debt would result in a benefit to the Debtor that outweighs the detrimental consequences to a spouse, former spouse or child of the Debtor." 11 U.S.C. § 523(a)(15)(B).

Unlike 11 U.S.C. § 523(a)(15)(A), there are no similar Bankruptcy Code provisions from which Bankruptcy Courts can seek guidance in applying this test. However, it is clear from the language of the statute that in determining whether a debt is nondischargeable under 11 U.S.C. § 523(a)(15)(B), a court must compare the standard of living of the debtor against the standard(s) of living of his or her spouse, former spouse and/or children to determine whether the debtor will "suffer more" by not receiving a discharge of the debts in question than his or her spouse would suffer if the obligations were discharged. *See In re Phillips*, 187

B.R. 363 (Bkrtcy.M.D.Fla.1995) ("The legislative history of this section essentially requires this Court to make a value judgment in deciding which party suffers most"). *See Also* the legislative history of 11 U.S.C. § 523(a)(15), reprinted at Exhibit B.

Courts have interpreted 11 U.S.C. § 523(a)(15)(B) in vastly different ways. In the case of *In re Florio*, 187 B.R. 654 (Bkrtcy.W.D.Mo.1995), the Bankruptcy Court indicated that where the debtor could afford to pay the debt and "discharging the obligation would simply provide the debtor with additional disposable income to use at his [or her] discretion" that the debt should be nondischargable *citing In re Carroll*, 187 B.R. at 201. In *Carroll*, however, the Court held that "extra income" to the Debtor was not a sufficient benefit to allow a discharge under § 523(a)(15)(B) where Creditor demonstrated *that she could not meet her basic needs without the payments which the debtor was seeking to discharge.*

In *In re Anthony*, 190 B.R. 433, *motion to reconsider denied*, 190 B.R. 429 (Bkrtcy. N.D.Ala.1995) the Bankruptcy Court held that the debtor who made $500.00 more per month than his former spouse failed to meet his burden of proof concerning the dischargability of a $9,000.00 marital obligation under 11 U.S.C. § 523(a)(15)(B). The Court made this finding even though the debtor's former spouse had inherited $71,000.00 since the divorce and the debtor owned no car and was living with his mother at the time of the 523(a)(15) trial.

The language in *Anthony* and *Florio* ignores the value of the Debtor's discharge and simply blends 11 U.S.C. § 523(a)(15)(B) into an inseparable mass with 11 U.S.C. § 523(a)(15)(A) by making the existence of "excess income" the determinative test of 523(a)(15)(B).

However, other courts have held "that a mere monetary loss" by a creditor in an 11 U.S.C. § 523(a)(15) action is generally an insufficient detriment to preclude a debtor from receiving a discharge, unless the debt in question is a third party "hold harmless" debt which a creditor also owes to a third party *See In re Hesson*, 190 B.R. at 240.

This test is too "pro-debtor" in that it ignores the balancing portion of the 11 U.S.C. § 523(a)(15)(B) test in favor of a narrow focus on the nature of the creditor's detriment. Loss of funds by a creditor may be a sufficient detriment to prevent the discharge of a debt, where the debtor can not demonstrate that he or she will receive a benefit which outweighs the detriment.

This Court believes that the best way to apply the 11 U.S.C. § 523(a)(15)(B) balancing test is to review the financial status of the debtor and the creditor and compare their relative standards of living to determine the true benefit of the debtor's possible discharge against any hardship the spouse, former spouse and/or children would suffer as a result of the debtor's discharge. If, after making this analysis, the debtor's standard of living will be greater than or approximately equal to the creditor's if the debt is not discharged, then the debt should be nondischargeable under the 523(a)(15)(B) test. However, if the debtor's standard of living will fall materially below the creditor's standard of living if the debt is not discharged, then the debt should be discharged under 11 U.S.C. § 523(a)(15)(B). This test is essentially the same as the test set forth by the United States Bankruptcy Court for the Eastern District of Kentucky in the case of *In re Owens*, 191 B.R. 669, 674–675 (Bkrtcy. E.D.Ky. February 2, 1996).

■ In order to make this determination, *at a minimum*, a Court should consider the following factors:

1.) The amount of debt involved, including all payment terms;

2.) The current income of the debtor, objecting creditor and their respective spouses;

3.) The current expenses of the debtor, objecting creditor and their respective spouses;

4.) The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;

5.) The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor, objecting creditor and their respective spouses;

6.) The health, job skills, training, age and education of the debtor, objecting creditor and their respective spouses;

7.) The dependents of the debtor, objecting creditor and their respective spouses, their ages and any special needs which they may have;

8.) Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since the entry of the divorce decree;

9.) The amount of debt which has been or will be discharged in the debtor's bankruptcy;

10.) Whether the objecting creditor is eligible for relief under the Bankruptcy Code; and

11.) Whether the parties have acted in good faith in the filing of the bankruptcy and the litigation of the 11 U.S.C. § 523(a)(15) issues.

This list of factors is by no means exclusive and the 523(a)(15)(B) balancing test have to be performed on a case by case basis.

■ In this case, neither the Debtor nor the Creditor are without resources. Both households have income of over $50,000.00 per year, even when the Debtor's child support and nondischargeable attorney fee payments are deducted from his household's income calculation. Further, in considering this balancing test the Court has imputed the approximate $20,000.00 annual income to the Creditor. This amount reflects the income which the Creditor, for valid and good faith reasons, has voluntarily given up in an effort to improve her education and career skills. While the Court finds that the Creditor did not leave the work force in an effort to manipulate this decision, we hold that where either a Debtor or Creditor has voluntarily reduced their income, that *voluntarily* reduction should still be considered by the Court in making the 523(a)(15)(B) balancing test.

■ Under the facts of this case, the Debtor will not be driven to a significantly lower standard of living by paying this debt. On the other hand, the Creditor will suffer little, if any, detriment if this debt is not paid. As this Court finds that the parties'

standards of living are approximately equal, regardless of whether this debt is discharged, this Court holds that the Debtor has failed to show that the benefit of a discharge of this debt outweighs the detriment to the Creditor which would arise if the discharge is granted and that this obligation is therefore nondischargeable. *See In re Florio,* 187 B.R. 654, 657 (where there is equal harm or lack of harm a debt is nondischargeable under 11 U.S.C. § 523(a)(15)(B)).

### H. Payment of 11 U.S.C. 4523(a)(15) Obligations

As noted above, this Court has the authority to either partially discharge and or equitably modify an obligation which it finds to be nondischargeable under 11 U.S.C. § 523(a)(15). Here, in light of our determination that the Debtor's obligation to pay his former spouse's divorce related attorney fees under 11 U.S.C. § 523(a)(5), we hold that the Debtor should repay the nondischargeable property equalization award at the rate of $500.00 per month, with payments beginning March 1, 1997, well after the Debtor should have repaid his former spouse's nondischargeable divorce related attorney fees. No further interest shall accrue on this sum from the date of this opinion until March 1, 1997, at which time the debt shall bear interest at the Kentucky post judgment rate of 12%. These payments shall be due on the first day of each month, beginning March 1, 1997 and the entire balance will become immediately due and payable if the Debtor fails to make any of these payments.

### I. Conclusion

The small stream of domestic relation cases which have been flowing through the Federal Courts under 11 U.S.C. § 523(a)(5) now threatens to become a mighty river under 11 U.S.C. § 523(a)(15). *See generally* Cullen, *Does Anybody Know the Rules in Federal Divorce Court?* 46 Rutgers L.Rev. 427 (1993). While the problem which 523(a)(15) was designed to address, i.e. high to moderate income debtors discharging property settlements which their former spouses are entitled to and in most cases desperately need, will be solved by this provision, the ability of former spouses to continue to wage legal war against each other in every bankruptcy proceeding will be a significant burden on all those involved. Too often this Court has seen impoverished parties in domestic/relation bankruptcy cases fight over the dischargeability of debts neither party can afford to pay as an outgrowth of the bitterness of their state court litigation. *See In re Silvers,* 187 B.R. 648 (Bkrtcy.W.D.Mo. 1995).

Unfortunately, § 523(a)(15) will give many such couples an additional avenue to continue their destructive fighting. This new domestic relations battlefield has the potential to make the already painful road of bankruptcy and divorce even more destructive than it is at the present time. Only time and caselaw will show whether the cost of this additional bitter litigation will be worth the benefit of preventing easy discharges of property based marital obligations under the Bankruptcy Code.

A separate order reflecting these findings shall be entered by this Court.

Exhibit A

Jefferson Circuit Court
Division Ten

No. 91CI01075.

Victor B. Smither, Petitioner,

v.

Joan M. Smither, Respondent.
### FINDINGS OF FACT, CONCLUSIONS OF LAW

### JUDGMENT

A Bench Trial having been held on February 11, 1993, and the proof having been supplemented by written arguments of counsel on June 15, 1993, the Court makes the following Findings of Fact:

1. The Petitioner, Victor B. Smither (hereinafter Victor) age 38, and the Respondent, Joan M. Smither (hereinafter Joan) age 39, were married on March 2, 1973 in Columbus, Ohio. Five children were born of this marriage: Victor Scott, August 6, 1973; Sean Michael, April 10, 1976; Sheri Lynn, July 1,

1985; Christine Sabrina, October 7, 1987; and Sara Marie, July 11, 1989.

2. The parties separated June 17, 1990. While Joan still does not believe the marriage is irretrievably broken, all attempts at reconciliation have failed.

3. Joan is not now pregnant and desires to keep her married name of Smither.

4. When the parties first married, Joan worked for Banc One. Victor worked at a shoe store, Lazarus and finally United Parcel Service ("UPS"), where he still works today.

5. Joan testified that early in the marriage the parties jointly agreed that efforts to promote Victor's career required her to stay home and nurture the children. According to her, goals were set to "further our goals at U.P.S.". Victor does not dispute this.

6. In June 1986, Joan began working third shift for the Huntington Bank. She was paid a ten (10%) percent differential because the twelve (12) midnight to eight (8) a.m. shift is considered to be the most demanding.

7. In August 1987, Victor was transferred to Louisville. Because Joan was pregnant at that time with Christine, their fourth child, she remained in Columbus. Three days after Christine was born, Joan moved to Louisville.

8. Because the parties still agreed to further Victor's career, Joan decided to forego more lucrative employment with Fischer's and remain with the banks. In November 1988, she began working for the Federal Reserve Bank. Again she worked the third shift so she could be home during the day with the children.

9. The Petitioner currently earns approximately $72,532.00 per year. [$68,880.00 annual salary (see Respondent's exhibit # 7) + $782.00 annual stock dividends + $2,870.00 annual Christmas bonus]. The Respondent earns $22,800.00 per year.

10. Unfortunately, neither party had the marital residence at 2512 Titleist Road appraised. Joan stated the Property Valuation Administrator assessed the property at $117,000.00. Victor, however, believes the property to be worth considerably more, as much as $130,000.00. The parties stipulated the house has an outstanding mortgage of $100,438.31. Thus, the equity in the house would range from $16,567.69 to $29,561.69. Wherefore, as there has been no appraisal done and the estimates of the parties are so uncertain, this Court does not find averaging the two values to be a viable option.

Joan testified the home is in poor repair and she has neither the time nor the resources to make the home more attractive to a potential buyer. [The current mortgage payment to Crestar on the real property is $1,193.00 per month (See Respondent's Financial Disclosure Statement)]. Based on her testimony, this Court finds that the current equity in the house would be greatly reduced, if not deleted altogether, considering the cost which would be required to: 1) prepare the house for sale; 2) pay the taxes; and 3) pay the real estate commissioners. Wherefore, for purposes of this action, and based upon the fact that neither party presented sufficient evidence to show where there would be any equity in the house remaining after the expenses detailed above, this Court finds the value of the house to be the current mortgage value of $100,438.31.

11. Despite the length of the marriage and the relatively comfortable incomes of the parties, few assets have been acquired by the parties. Victor has a retirement plan and stock through UPS; Joan has approximately twenty (20) shares of BancOne stock and a thrift plan.

Victor has failed to provide this Court with the value of his retirement account. He did, however, provide evidence to show the value of the stock he has through his employer. His UPS stock is valued at $8,862.00 and his Overseas Partners Limited stock is valued at $9,798.00. (The 1993 dividend from these stocks was projected to be $9,072.00). Victor also has a thrift plan with a value of $3,655.00.

Joan has stock through BancOne with a value of $1,037.00 and a thrift plan through her employer with a value of $5,910.00.

[12.]

13. Joan currently has two motor vehicles: a 1991 Geo Metro, valued at $4,850.00 with a lien of $5,613.25; and a 1987 conversion van with an unencumbered value of $4,225.00. Victor purchased a 1989 Corvette using a Camaro purchased during the marriage as a down payment. The value of the Corvette is $18,750.00 with an outstanding loan balance of $18,188.50.

14. Additional assets include life insurance policies for the benefit of the children and a life insurance policy for the Petitioner with a cash value of approximately $923.00.

15. The parties have also agreed to equally divide the federal and state tax returns for tax year 1992. Further, as to the decree of dissolution has not been entered in this action heretofor, this Court also finds that any federal or state tax return for tax year 1993 shall be equally divided.

16. The parties have agreed and equitably divided the household goods, furniture and furnishings. There is no need for this Court to interfere with the parties agreement in regard to this issue as the agreement appears to be conscionable.

17. The parties have also agreed that based upon the disparity in the incomes between the parties, Joan is entitled to receive maintenance. The parties disagree, however, as to the amount and duration of maintenance.

18. As to the issue of custody of the infant children, the parties have also agreed that Joan will have primary custody of the children, with Victor receiving liberal visitation rights. As to child support, Joan has requested that Victor also pay for childcare expenses in order that she might further her education.

19. The debts of the parties are: 1) $100,-438.31 mortgage on the marital residence; 2) debt to the First National Bank against the Metro Geo in the amount of $5,613.25; 3) VISA CMEFCU in the amount of $300.00; 4) debt on Colorado Prime Food Freezer in the amount of $1,399.35; 5) debt to Federal Reserve Credit Union in the amount of $3,199.79; 6) debt on the Corvette in the amount of $18,188.50; and 7) Victor's VISA debt in the amount of $6,800.00.

## CONCLUSIONS OF LAW

### I. Division of Marital Estate:

**KRS 403.190** requires this Court to divide marital property in just proportions. There is no statutory basis for dividing the marital estate equally, rather this Court is required to consider the relevant factors of **KRS 403.190(1)(a)–(d)** in dividing the marital estate. *Reeves v. Reeves,* Ky.App., 753 S.W.2d 301 (1988). *Wood v. Wood,* Ky.App., 720 S.W.2d 934 (1986). In the instant case, after considering the evidence, this Court holds the marital assets shall be divided equally between the parties, being that both parties contributed equally to the marital assets through monetary, child care and home care contributions.

A. REAL ESTATE: The marital residence, located at 2512 Titleist Road, has not been appraised and has an outstanding mortgage of $100,438.69. While the parties agree there is some equity in the house, the uncertainty of the amount requires this Court to question the validity of the parties' estimates. In addition, due to the ill state of repair of the house, this Court is of the impression that any equity, remaining after repair of the house, would be so minimal that any projected allocation would not be feasible.

Victor contends Joan should be awarded the house so the children can remain in the marital residence. However, Victor, contending the amount of equity in the house is approximately $30,000.00, asserts the value of the equity should be offset with the value of his stocks. Joan asserts she cannot afford to keep the house without an increase in support from Victor. Joan contends the cost of the mortgage, the needed repairs and the maintenance are above her current financial capability.

Having considered this issue, this Court finds that it would be in the best interest of the children to award Joan ownership of the marital residence. As this Court finds there is no or minimal equity in the house, this Court will not assess a value to the alleged

equity, not will it offset the alleged equity against Victor's stock.

In her discretion, Joan can either live in the marital residence or she can sell it. If Joan chooses to sell the house, all proceeds from the sale of the house shall go to discharge the mortgage debt thereon. In the event there are monies left over from the sale of the house, these monies shall be given to Joan forthwith for her to secure housing for herself and the infant children. No equity in the house shall be assessed against Joan in valuing the marital estate.

B. PERSONAL PROPERTY:

1. Jewelry: Each party shall keep their own jewelry with no costs assessed thereon.

2. Household Furnishings: The parties have agreed that all furniture, appliances and household goods in the possession of the Petitioner shall be the property of the Petitioner, free of any claim of the Respondent; all furniture, appliances and household goods in the possession of the Respondent shall be the property of the Respondent, free of any claim of the Petitioner. Whereupon, this Court, having found said agreement to be conscionable, hereby awards each party the household furnishings they currently possess.

3. Automobiles: Joan shall be awarded the 1991 Metro Geo valued at $4,850.00 with a lien of $5,613.25 and the 1987 conversion van valued at $4,225.00. Victor shall be awarded the Corvette valued at $18,750.00 with an outstanding loan balance of $18,-188.50.

4. Securities, Holdings and Business Interests: The following securities, holdings and business interests shall be allocated as follows:

a. The UPS stock valued at $8,862.00 shall be assigned to Victor.

b. The Overseas Partners Limited Stock valued at $9,798.00 shall be assigned to Victor.

c. The 1993 stock dividend from the above mentioned stocks shall be assigned to Joan.

d. Victor's thrift plan valued at $3,655.00 shall be assigned to him.

e. The BancOne stock valued at $1,037.00 shall be assigned to Joan.

f. Joan's thrift plan, through her employer, valued at $5,910.00 shall be assigned to her.

5. RETIREMENT ACCOUNTS: Joan presented evidence to show that she is currently not eligible to participate in a retirement plan through her employer; Victor has a retirement plan through UPS. Evidence presented at trial shows that Victor will not realize proceeds from his retirement plan until he is sixty (60) years of age. However, both Joan and Victor agree that Joan is entitled to receive part of the proceeds from Victor's retirement plan when he is eligible to receive them. Wherefore, this Court holds that Joan shall receive fifty (50) percent of the benefits of Victor's retirement plan with UPS accumulated during the marriage. As such, the parties are hereby ordered to remit a Qualified Domestic Relations Order ("QDRO") to this Court outlining the division of Victor's retirement account. The value of the retirement account shall be assessed as of the date of entry of this decree.

6. LIFE INSURANCE POLICIES: The parties currently have life insurance policies on Victor and the infant children. The parties have agreed to continue the life insurance policies on the lives of the children until they are emancipated. The cost for continuing these policies shall be equally divided between the parties. As to the Midland Mutual Life insurance policy on Victor, this shall be assigned to him with a value of $922.74.

II. Maintenance:

KRS 403.200 governs the award of maintenance. *Drake v. Drake*, Ky.App., 721 S.W.2d 728, 730 (1986) states Kentucky law is clear that in order for an award of maintenance to be proper, the elements of both **KRS 403.200(2)(a)** and **(b)** must be satisfied. There must be a finding the spouse seeking maintenance lacks sufficient property, including marital property, to provide for their reasonable needs. Additionally, that spouse must be unable to support themselves through appropriate employment according to the standard of living established during the

marriage. *Casper v. Casper,* Ky., 510 S.W.2d 253 (1974).

Both parties agree that based upon the disparity of the incomes between the parties Joan will need maintenance. Victor has stated that he believes $500.00 per month to be a fair amount of maintenance. This Court agrees. Wherefore, based upon the fact that: 1) there is a wide disparity between the incomes of the parties; 2) Joan's monthly expenses far exceed her monthly income; and 3) Joan wishes to further her education in order to become more competitive in the job market, this Court hereby awards Joan maintenance in the amount of § 500.00 per month for a duration of five (5) years from date of entry of this decree. In addition, this amount of maintenance shall be considered to be retroactive.

When the parties separated, they agreed that Victor would pay $2,000.00 per month to Joan as family support. However, the evidence shows that Victor has failed to abide by this agreement as he has unilaterally reduced the monthly payment by as much as $850.00 per month. As such, Joan has requested this Court to enter a common law judgment ordering Victor to pay support arrearages. Wherefore, this Court hereby holds that for purposes of determining whether support arrearages are due, the amount of maintenance ordered by the Court shall be added to the amount of child support ordered by the Court and the total shall be retroactive from the date the parties separated until the date of entry of this decree. The amount Victor actually paid shall be deducted from the total amount due and the amount unpaid by Victor shall be deemed an arrearage. In the event it is determined that arrearages are owed, Victor shall pay them no later than sixty (60) days after date of entry of this Judgment.

### III. Custody and Visitation:

As to the custody of the infant children, the parties have agreed Joan will retain primary custody of the infant children with Victor retaining liberal visitation rights, as well as, consideration in all major decisions pertaining to the children's health, education, medical treatment, religious training, social privileges and welfare. The parties have agreed on a liberal visitation schedule, and this Court, having found such agreement to be conscionable, hereby finds that Joan shall have custody of the infant children with Victor having liberal visitation rights as determined by the parties.

### IV. Child Support:

The child support shall be calculated in accordance with **KRS 403.212.** This Court in determining the amount of child support due assessed the combined monthly adjusted gross income to be $7,944.00. This figure was obtained by averaging Joan's annual income of $28,800.00 ($22,800.00 from her employment plus $6,000.00 from maintenance) and Victor's annual income of $66,532.00 ($72,532.00 − $6,000.00 maintenance payments to Joan) and then dividing the total figure by twelve. [$28,800.00 + $66,532.00 = $95,332.00 ÷ 12 = $7,944.00]. The percentage of income allocated to each parent then becomes thirty (30%) percent or $2,383.00 to Joan and seventy (70%) percent or $5,560.00 to Victor. Consequently, the proportionate share of child support each party shall be responsible for shall be assessed at thirty percent to Julie and seventy percent to Victor.

Having determined what percentage each party shall be responsible for, this Court next looks to the issue of the number of children deemed to require support. While only four (4) of the infant children are unemancipated per statute, Joan contends the eldest son, Victor Scott, should also receive child support from his father. Joan bases this assertion on the fact that she and Victor are members of the Church of Jesus Christ of Latter Day Saints ("Mormon") and they agreed to support their children while they were on their religious "mission".

A mission through the Mormon Church involves a male child being away from his home for two years, but dependent upon his family for his financial support. Performing such a mission is a fundamental principle of the Mormon Church and this family's religious beliefs.

The evidence during the trial showed that Victor was the one who encouraged the family to follow the Mormon faith. In fact, the testimony revealed that Joan, only upon request of Victor, converted to the Mormon faith and agreed to rear her children in strict accordance with that faith. As such, this Court finds it ironic that Victor would now claim he owes no financial support for his eldest child who is on his mission.

Whereupon, based upon the testimony, the evidence presented at trial, and the religious beliefs of the parties, this Court finds that Victor and Joan entered into an agreement whereby they agreed to financially support their male children while they performed their religious missions. Wherefore, recognizing that a court may require a parent to support a child beyond majority when the evidence shows that the parents contracted to such support, this Court hereby orders that Victor shall be required to provide child support for the four infant children still at home and for the eldest son while he is on his religious mission. (See *Wilhoit v. Wilhoit*, Ky., 521 S.W.2d 512, 513 (1975) and *Stevens v. Stevens*, Ky. 798 S.W.2d 136, 139 (1990). After the eldest son completes his two year mission, Victor's child support obligation shall reduced according to **KRS 403.212** and **KRS 405.020**. In addition, as regards future child support, the Court holds that Victor shall be obligated to provide child support for the younger son if the younger son also performs his religious mission.

Wherefore, in calculating the amount of child support, this Court hereby holds that the total amount of child support due shall be $2,093.00 per month. Of this amount, Joan shall be responsible for thirty percent or $628.00 per month and Victor shall be responsible for seventy percent or $1,465.00 per month. In addition to the total amount of child support due, the parties shall each party shall be responsible for fifty (50%) percent of the total costs associated with child care.

Further, Victor shall be responsible for providing medical insurance coverage for each child for as long as he is obligated to provide child support for that child. The level of any subsequent medical insurance coverage must be commensurate with the level of medical insurance currently provided for the children. Further, any medical payments not covered by medical insurance shall be equally divided between the parties with both Joan and Victor having responsibility for fifty (50%) percent of medical payments not covered by insurance.

As regards tax exemptions for the children, Joan shall be allowed to claim the youngest child as a tax exemption and Victor shall be allowed to claim all of the other children. Furthermore, Victor shall carry life insurance on himself, with the children, or Trust for the children, listed as beneficiaries to ensure that child support shall continue in the event of Victor's demise.

## V. Attorney's Fees:

As to the issue of Court costs and attorney's fees, it is Victor's position that each of the parties shall pay their own costs and fees. Conversely, Joan submits she is entitled to an award of her fees and costs due to the disparity in the parties respective incomes. This Court, having considered the record, hereby holds that Victor shall pay his own court costs and attorney's fees and, furthermore, he shall be obligated to pay Joan's court costs and attorney's fees as well.

## VI. Computation of the Marital Estate:

This Court finds that the marital estate of the parties consists of the following:

| | | |
|---|---|---:|
| 2512 Titleist Road | (−) | $100,438.31 |
| UPS Stock | | 8,862.00 |
| Overseas Partners Limited Stock | | 9,798.00 |
| 1993 Dividend from Stock | | 9,072.00 |
| BancOne Stock | | 1,037.00 |
| Victor's Thrift Plan | | 3,655.00 |
| Joan's Thrift Plan | | 5,910.00 |
| 1991 Geo Metro | (−) | 5,613.25 |
| 1987 Conversion Van | | 4,225.00 |
| 1989 Corvette | (−) | 18,750.00 |
| Midland Life Insurance Policy | | 923.00 |
| 1992 Federal and State Tax Returns | | ? |
| 1993 Federal and State Tax Returns | | ? |
| Victor's Retirement Plan | | ? |
| 1994 Dividends from Stock | | ? |
| Total | (+) | $43,482.00 |
| | | |
| Net Marital Estate | | $43,482.00 |
| Divided Equally | × | .50 |
| | | |
| Net Amount of Estate To Be Allocated to Each Party | | $21,741.00 |

## COURT ORDERED DISPOSITION OF MARITAL ASSETS/DEBTS

| ASSET/DEBT | JOAN | VICTOR |
|---|---|---|
| 2512 Titleist | (−) $100,438.31 | |
| UPS Stock | | $8,862.00 |
| Overseas Stock | | 9,798.00 |
| 1993 Dividend from stock | 9,072.00 | |
| BancOne Stock | 1,037.00 | |
| Victor's Thrift Plan | | $3,655.00 |
| Joan's Thrift Plan | 5,910.00 | |
| 1991 Geo Metro | (−) 5,613.00 | |
| 1987 Van | 4,225.00 | |
| 1989 Corvette | | (−) 18,750.00 |
| Midland Ins. Policy | | 923.00 |
| VISA CMEFCU | (−) 150.00 | (−) 150.00 |
| Food Freezer Debt | (−) 699.68 | (−) 699.67 |
| Credit Union Debt | (−) 1,600.00 | (−) 1,600.00 |
| VISA (Victor) | | (−) 6,800.00 |
| 1992 State and Fed Return | one-half | one-half |
| 1993 State and Fed Return | one-half | one-half |
| Victor's Retirement Plan | one-half | one-half |
| 1994 Dividend from Stock | one-half | one-half |
| Total | $20,244.00 (+) | $23,238.00 (+) |

## JUDGMENT

Wherefore, for all the above stated reasons:

**IT IS HEREBY ORDERED AND ADJUDGED** that:

1. The marriage between the Petitioner, Victor B. Smither, and the Respondent, Joan M. Smither, be and hereby is **DISSOLVED;**

2. The Respondent shall be awarded custody of the infant children with the Petitioner retaining liberal visitation rights;

3. The Petitioner shall pay child support to the Respondent in the amount of $1,465.00 per month until Victor Scott completes his religious mission. Thereafter, the Petitioner shall pay child support for four children in accordance with **KRS 403.212** and **KRS 405.020** and pursuant to the dictates of this Judgment;

4. The Petitioner and the Respondent shall each pay one-half of the costs associated with child care. These payments are in addition to the child support stated above;

5. The Petitioner shall provide medical insurance on the infant children until such time as they become emancipated and no longer require child support;

6. The Petitioner and the Respondent shall each be responsible for fifty (50%) percent of any medical payment not covered by medical insurance;

7. The Petitioner shall carry life insurance on himself to satisfy the obligation of child support;

8. The Respondent shall be allowed to claim the youngest child as a tax exemption and the Petitioner shall be allowed to claim all the other children as tax exemptions;

9. The Respondent shall be awarded maintenance in the amount of $500.00 per month for five years from the date of entry of this Judgment. The Petitioner's obligation to pay this sum shall cease upon the death or remarriage of the Respondent, whichever might occur first;

10. The marital estate, including real property, furnishings, business interests and holdings, retirement accounts and automobiles shall be equally divided between the parties;

11. Those marital assets listed above as being assigned to the Petitioner are hereby awarded to him;

12. Those marital assets listed above as being assigned to the Respondent are hereby awarded to her;

13. The Court hereby awards the Petitioner the UPS Stock, the Overseas Partners Limited Stock, his thrift plan, the Midland Life Insurance Policy, one-half of the 1992 state and federal tax refunds, one-half of the 1993 state and federal tax refunds, one-half of his retirement fund and one-half of the 1994 dividends from the stock (minus $2,994.00— the difference in marital assets awarded to the parties);

14. The Court hereby awards the Respondent the 1993 dividends from the stock, the BancOne stock, her thrift plan, the conversion van, one-half of the 1992 state and federal tax refund, one-half of the 1993 state and federal tax refund, one half of the Petitioner's retirement plan with UPS and one-half of the 1994 dividends from the stock (plus $2,994.00—the difference in marital assets awarded to the parties);

15. The Court hereby awards the Petitioner the 1989 Corvette and the debt thereon (− $18,750.00), one-half of the VISA CMEFCU debt (− $150.00), one-half of the food freezer debt (− $699.68), one-half of the credit union debt (− $1,600.00), and his debt with VISA (− $6,800.00);

16. The Court hereby awards the Respondent the marital residence and the debt thereon (− $100,438.00), the 1991 Metro Geo and the debt thereon (− $5,613.00), one half of the VISA CMEFCU debt (− $150.00), one-half of the food freezer debt (− $699.68), and one-half of the credit union debt (− $1,600.00);

17. The parties shall be responsible for the debts assigned to them and shall pay them accordingly;

18. The parties shall remit a Qualified Domestic Relations Order to this Court setting forth the distribution of the Petitioner's retirement plan in accordance with the holdings of this Court;

19. The Petitioner shall pay to the Respondent, no later than sixty (60) days after date of entry of this Judgment, those monies awarded her from the 1993 stock dividends and the 1992 state and federal tax returns. Thereafter, the Petitioner shall pay the Respondent, within thirty (30) days after receipt thereof, her share of the 1993 state and federal tax returns and the 1994 stock dividends. In addition, the Petitioner shall pay the Respondent $2,994.00 within ninety (90) days of entry of this Judgment in order to equalize the amount of assets awarded to each party; and

20. The Petitioner shall be responsible for both his and the Respondent's court costs and attorneys' fees.

There being no just cause for delay, this is a final and appealable order.

/s/ Thomas B. Wine
THOMAS B. WINE, JUDGE
November 23, 1993
DATE

EXHIBIT B

LEGISLATIVE HISTORY OF 11 U.S.C. § 523(A)(15), H.R.REP. NO. 103–835, 103th CONG. 2nd SESS. (1994); [U.S.Code Cong. & Admin.News 1994, p. 3340] 104 CONG. REC. H 10752 (OCTOBER 4, 1994).

SUBSECTION (E) [11 U.S.C. § 523(A)(15)] ADDS A NEW EXCEPTION TO DISCHARGE FOR SOME DEBTS ARISING OUT OF A DIVORCE DECREE OR SEPARATION AGREEMENT THAT ARE NOT IN THE NATURE OF ALIMONY, MAINTENANCE OR SUPPORT. IN SOME INSTANCES, DIVORCING SPOUSES HAVE AGREED TO MAKE PAYMENTS OF MARITAL DEBTS, HOLDING THE OTHER SPOUSE HARMLESS FROM THOSE DEBTS, IN EXCHANGE FOR A REDUCTION IN ALIMONY PAYMENTS. IN OTHER CASES, SPOUSES HAVE AGREED TO LOWER ALIMONY BASED ON A LARGER PROPERTY SETTLEMENT. IF SUCH "HOLD HARMLESS" AND PROPERTY SETTLEMENT OBLIGATIONS ARE NOT FOUND TO BE IN THE NATURE OF ALIMONY, MAINTENANCE, OR SUPPORT, THEY ARE DISCHARGEABLE UNDER CURRENT LAW. THE NONDEBTOR SPOUSE MAY BE SADDLED WITH SUBSTANTIAL DEBT AND LITTLE OR NO ALIMONY OR SUPPORT. THIS SUBSECTION WILL MAKE SUCH OBLIGATIONS NONDISCHARGEABLE IN CASES WHERE THE DEBTOR HAS THE ABILI-

TY TO PAY THEM AND THE DETRIMENT TO THE NONDEBTOR SPOUSE FROM THEIR NONPAYMENT OUTWEIGHS THE BENEFIT TO THE DEBTOR OF DISCHARGING SUCH DEBTS. IN OTHER WORDS, THE DEBT WILL REMAIN DISCHARGEABLE IF PAYING THE DEBT WOULD REDUCE THE DEBTOR'S INCOME BELOW THAT NECESSARY FOR THE SUPPORT OF THE DEBTOR AND THE DEBTOR'S DEPENDENTS. THE COMMITTEE BELIEVES THAT PAYMENT OF SUPPORT NEEDS MUST TAKE PRECEDENCE OVER PROPERTY SETTLEMENT DEBTS. THE DEBT WILL ALSO BE DISCHARGED IF THE BENEFIT TO THE DEBTOR OF DISCHARGING IT OUTWEIGHS THE HARM TO THE OBLIGEE. FOR EXAMPLE, IF A NONDEBTOR SPOUSE WOULD SUFFER LITTLE DETRIMENT FROM THE DEBTOR'S NONPAYMENT OF AN OBLIGATION REQUIRED TO BE PAID UNDER A HOLD HARMLESS AGREEMENT (PERHAPS BECAUSE IT COULD NOT BE COLLECTED FROM THE NONDEBTOR SPOUSE OR BECAUSE THE NONDEBTOR SPOUSE COULD EASILY PAY IT) THE OBLIGATION WOULD BE DISCHARGED. THE BENEFITS OF THE DEBTOR'S DISCHARGE SHOULD BE SACRIFICED ONLY IF THERE WOULD BE SUBSTANTIAL DETRIMENT TO THE NONDEBTOR SPOUSE THAT OUTWEIGHS THE DEBTOR'S NEED FOR A FRESH START.

THE NEW EXCEPTION TO DISCHARGE, LIKE THE EXCEPTIONS UNDER BANKRUPTCY CODE SECTION 523(A)(2), (4), AND (6) MUST BE RAISED IN AN ADVERSARY PROCEEDING DURING THE BANKRUPTCY CASE WITHIN THE TIME PERMITTED BY THE FEDERAL RULES OF BANKRUPTCY PROCEDURE. OTHERWISE THE DEBT IN QUESTION IS DISCHARGED. THE EXCEPTION APPLIES ONLY TO DEBTS INCURRED IN A DIVORCE OR SEPARATION THAT ARE OWED TO A SPOUSE OR FORMER SPOUSE, AND CAN BE ASSERTED ONLY BY THE OTHER PARTY TO THE DIVORCE OR SEPARATION. IF THE DEBTOR AGREES TO PAY MARITAL DEBTS THAT WERE OWED TO THIRD PARTIES, THOSE THIRD PARTIES DO NOT HAVE STANDING TO ASSERT THIS EXCEPTION, SINCE THE OBLIGATIONS TO THEM WERE INCURRED PRIOR TO THE DIVORCE OR SEPARATION AGREEMENT. IT IS ONLY THE OBLIGATION OWED TO THE SPOUSE OR FORMER SPOUSE—AN OBLIGATION TO HOLD THE SPOUSE OR FORMER SPOUSE HARMLESS—WHICH IS WITHIN THE SCOPE OF THIS SECTION. *SEE IN RE MACDONALD*, 69 B.R. 259, 278 (BANKR.D.N.J.1986).

### ORDER

This matter coming before the Court on the 11 U.S.C. §§ 523(a)(5) and (a)(15) nondischargability complaint of Joan Smither against the debtor, Victor Smither, and the Court having reviewed the pleadings, held an evidentiary hearing on this matter and being otherwise sufficiently advised;

IT IS THEREFORE ORDERED that Victor Smither's obligation to pay Joan Smither's Attorney fees in the amount of $13,168.00, plus interest be and hereby is NONDISCHARGABLE under the provisions of 11 U.S.C. § 523(a)(5); and

IT IS FURTHER ORDERED that Victor Smither's obligation to pay $2,994.00, plus interest, as a equalization of marital property, be and hereby is NONDISCHARGABLE under the following terms and conditions:

1). The Debtor shall repay the nondischargeable property equalization award at the rate of $500.00 per month, with payments beginning March 1, 1997;

2). No further interest shall accrue on this sum from the date of this opinion until March 1, 1997, at which time the debt shall bear interest at the Kentucky post judgment rate of 12%;

3). These payments shall be due on the first day of each month, beginning March 1, 1997 and the entire balance will become immediately due and payable if the Debtor fails to make any of these payments.

THIS IS A FINAL AND APPEALABLE ORDER.