In re John E. ADAMS, Debtor.

Charlene M. BEASLEY,
Plaintiff, Appellee,

v.

John E. ADAMS, Defendant, Appellant.

No. 95 C 6439.
Bankruptcy No. 95 B 8995.
Adversary No. 95 A 921.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 28, 1996.

---

Howard A. Harris, Lincolnwood, IL, for appellant John E. Adams.

Charlene M. Beasley, Chicago, IL, pro se.

### *MEMORANDUM OPINION*

GRADY, District Judge.

This is an appeal from a final judgment of the bankruptcy court of the Northern District of Illinois determining, in an adversary matter, that the claim of plaintiff/appellee Charlene M. Beasley against debtor/appellant John E. Adams was not dischargeable pursuant to 11 U.S.C. § 523(a)(15). For the reasons explained in this opinion, the judgment is reversed and the case is remanded.

### *BACKGROUND*

Adams filed a voluntary Chapter 7 bankruptcy petition on May 4, 1995. Beasley, appearing *pro se*, filed a timely adversary complaint ("complaint") in the matter in order to determine the dischargeability of a debt owed to her by Adams that arose out of a Dissolution Of Marriage action ("divorce") between Beasley and Adams in the Circuit Court of Cook County, Illinois. The complaint alleged that the divorce court had awarded Beasley a lump sum of money in lieu of maintenance payments, that this cash payment was in the nature of support, and that therefore it was not dischargeable in bankruptcy pursuant to 11 U.S.C. 523(a)(5). In his answer to the complaint, Adams admitted that the divorce court had ordered him to make an $18,000.00 cash payment to Beasley, denied that the payment was in lieu of maintenance or support, and affirmatively stated that the payment was a property settlement.

Trial of the adversary matter was set for September 20, 1995, before Bankruptcy Judge Wedoff. On September 12, 1995, Beasley sent notice of a motion to amend the adversary complaint to be heard at 2:00 P.M. on the day of trial. Beasley proposed two amendments to her complaint: (1) a new paragraph alleging that the detrimental consequences to her of discharging the debt would outweigh the benefit to Adams; and (2) an amendment to her allegation of nondischargeability, stating that the debt was nondischargeable pursuant to both 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 523(a)(15). When the trial began, Judge Wedoff granted Beasley's motion to amend over Adams' objection. The judge reasoned that the amendment arose out of the same facts as the original pleading and simply added a different legal theory.

Beasley took the stand and, among other things, testified to the following regarding her financial situation: (1) she was an accountant; (2) her current earnings were $63,000.00 per year in her job with the Chicago Park District; (3) within the next 30 days she would be leaving that job to enter divinity school and was negotiating with her church to become its chief financial officer at a salary of $45,000.00 to $50,000.00 per year; (4) her rent was $750.00 per month; (5) child care for her two children was $540.00 per month; (6) that while she was supposed to receive $800.00 per month in child support from Adams, the most recent check she had received was in the amount of $200.00. After taking additional testimony from Beasley on the nature of the divorce court's award to her, Judge Wedoff found that the award was in the nature of a property settlement, and

that therefore Section 523(a)(5) was not a bar to discharge.

The judge then took testimony from Adams on his financial situation in order to determine whether the award was dischargeable pursuant to Section 523(a)(15). Among other things, Adams testified to the following: (1) he was also an accountant; (2) his earnings from a full-time job he had held during the previous two years averaged $36,-500.00 per year; (3) he left that position in order to make more money, was currently interviewing, and would anticipate making $40,000.00 per year as a full-time employee of an accounting firm; (4) he had earned $8,090.00 during the three months prior to the trial in a temporary position with an accounting firm; (5) he lived with his new wife and her 13 year old son in an apartment in the two-flat apartment building his wife had owned since before they met; (6) net of rent on the other apartment in the building, he estimated the mortgage payments on the two-flat to be $630.00 per month; (7) his wife earned $55,000.00 per year as a nurse; (8) he had two other nondischarged debts that included $2,500.00 owed to the IRS, and $16,-400.00 owed as restitution resulting from a federal conviction. Judge Wedoff found that the debt to Beasley was nondischargeable because Adams had the ability to pay it—due to the fact that he lived essentially rent-free in his wife's building and his wife's income covered his other expenses—and because the benefit of discharge to Adams would not outweigh the detriment to Beasley since the expenses of the families were about equal and Adams and his new wife earned more than Beasley.

## DISCUSSION

On appeal from an order of a bankruptcy court, a district court reviews factual findings of the bankruptcy court under a "clearly erroneous" standard, but reviews conclusions of law de novo. Bankr.R. 8013; *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994); *In re Roberson*, 999 F.2d 1132, 1134 (7th Cir. 1993). Adams raises three issues on appeal: (1) whether Beasley's amendment of her complaint to add a claim under 11 U.S.C. § 523(a)(15) related back to the original filing date of the complaint so that the new claim

would not be time-barred; (2) whether the bankruptcy judge properly admitted evidence of the income and property of Adams' non-bankrupt current spouse to determine that Adams had the ability to pay pursuant to 11 U.S.C. § 523(a)(15); and (3) whether the bankruptcy judge abused his discretion when he determined that discharge of the debt would not result in a benefit to the debtor that outweighs the detrimental consequence to his former wife. The first two issues are matters of law that will be reviewed de novo, and the final issue is one of fact that will be reviewed for clear error.

## I. Relation Back

■ Beasley's Section 523(a)(15) claim would have been time-barred, had the bankruptcy judge not held that Beasley's amendment adding that claim related back to the filing date of her original complaint, because "[a] complaint to determine the dischargeability of any debt pursuant to [Section 523(a)(15)] shall be filed not later than 60 days following the first date set for the meeting of creditors." Bankr.R. 4007(c). There is no dispute that Beasley's original adversary complaint alleging non-dischargeability under Section 523(a)(5) was filed within that time period and that the amended complaint adding the Section 523(a)(15) claim was filed after the 60 day period had expired. Adams acknowledges that Fed.R.Civ.P. 15 applies to adversary proceedings in the bankruptcy court, pursuant to Bankr.R. 7015, but argues that because the new claim was based on entirely new facts, it was error under Rule 15 to allow the Section 523(a)(15) claim to relate back to the original filing date.

This court does not agree that the Section 523(a)(15) claim was based on entirely new facts. For over 150 years, various bankruptcy acts have limited the debts arising from a dissolution of marriage that are non-dischargeable in bankruptcy to those debts that are in the nature of alimony or support. *In re Smither*, 194 B.R. 102, 105 (Bankr. W.D.Ky.1996). That provision is presently codified as Section 523(a)(5), which states that an individual debtor is not discharged from any debt

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that . . .

    (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5). This provision has caused various problems, including: frequent litigation over whether particular settlement agreements and divorce decrees called for alimony; and unjust results in some cases where ex-spouses were unable to prove that their divorce decrees called for alimony. *Smither*, 194 B.R. at 105–06; *In re Butler*, 186 B.R. 371, 375 (Bankr.D.Vt.1995). In response to these problems, Congress enacted Section 523(a)(15) in October 1994. *Smither*, 194 B.R. at 106. Under this new provision, an individual debtor is not discharged from any marital debt that is not in the nature of alimony, maintenance, or support unless the debtor is unable to pay the debt or the benefit to the debtor of discharging the debt would outweigh the detriment to the debtor's former spouse. 11 U.S.C. § 523(a)(15).

Sections 523(a)(5) and (a)(15) are, then, "merely alternate theories for an objecting ex-spouse to establish a debt as non-dischargeable." *Butler*, 186 B.R. at 375. Which of these alternate theories applies depends upon whether the debt is in the nature of alimony, maintenance or support; or in the nature of a property settlement. This is a factual determination that the bankruptcy judge must make no matter whether Section (a)(5), Section (a)(15) or both are at issue, and no matter what language was used in the agreement or divorce decree since "even an obligation designated as property settlement may be related to support because state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution." *In re Gianakas*, 917 F.2d 759, 763 (3rd Cir.1990).

"An amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Fed.R.Civ.P. 15(c)(2). Clearly, claims under both Section 523(a)(5) and Section 523(a)(15) arise out of the same transaction—the settlement agreement or divorce decree. Therefore Judge Wedoff was correct to hold that the amendment to add an alternative claim under Section 523(a)(15) to a complaint already alleging facts supporting a claim under Section 523(a)(5) related back to the original filing date.

## II. Adams' Ability to Pay the Debt to Beasley

    █ Adams argues that it was an error of law for the bankruptcy judge to have taken evidence of Adams' new wife's income in order to determine whether Adams had the ability to pay Beasley's debt. A marital debt, like Beasley's, will not be discharged unless "the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 523(a)(15)(A). It is not disputed that Adams has income and property sufficient to pay the debt. It is also clear, however, that Judge Wedoff based his finding that Adams had the ability to pay Beasley's debt—in spite of the fact that Adams testified that he had other nondischarged court-ordered financial obligations that he had to satisfy out of his income—upon a finding that none of Adams' income or property was reasonably necessary to be expended upon maintenance and support because he and the entire family could rely upon Adams' new wife's income for support.

Adams cites *In re Carter*, 189 B.R. 521 (Bankr.M.D.Fla.1995), for the proposition that a court may not inquire into the finances of a debtor's new spouse because "[t]he language of 523(a)(15)(A) restricts the determination of the ability to pay solely to the income of the debtor." *Id.* at 522. However, this court is persuaded by more recent opinions of bankruptcy courts that have held that

while the statute limits consideration of the debtor's ability to pay to consideration only of what is left of the *debtor's* income and property after subtracting "reasonably necessary" living expenses, courts cannot possibly determine exactly how much of a debtor's own income is truly "necessary" for his and his dependent's support without inquiring into whether or not, and how much, his new spouse is contributing to the family's maintenance. *In re Cleveland,* 198 B.R. 394, 398–400 (Bankr.N.D.Ga.1996).

The recent cases also note that the Section 523(a)(15)(A) language is virtually identical to the language in 11 U.S.C. § 1325(b)(2) defining "disposable income" for Chapter 13 plan confirmation purposes. *Id.* at 399 n. 6; *Smither,* 194 B.R. at 108. In the Chapter 13 context, the income of the debtor's spouse is taken into account to determine the "disposable income" available to pay off the debtor's creditors. *In re Cardillo,* 170 B.R. 490, 492 (Bankr.D.N.H.1994); *In re Schnabel,* 153 B.R. 809, 818 (Bankr.N.D.Ill.1993); *In re Belt,* 106 B.R. 553, 561–62 (Bankr.N.D.Ind. 1989). If a court were to include a spouse's share of expenses in its Chapter 13 disposable income calculation, but exclude the spouse's income from that calculation, the creditors would in effect be subsidizing the debtor's spouse. *Schnabel,* 153 B.R. at 818. That is a result not contemplated by the statute. *Id.*

Similarly, in the present case Beasley would be subsidizing Adams' new wife's expenses if Judge Wedoff had deducted the expenses of Adams' new family—including the mortgage payment on the wife's two-flat where they lived—from only Adams income, and had not considered his new wife's income. Especially since, as we noted above, one of the reasons Congress enacted Section 523(a)(15) was to minimize the unfairness that sometimes results from a determination under Section 523(A)(5) that a spousal award was a property settlement rather than alimony, the unfair result that an ex-wife would be

subsidizing a new wife's expenses could not have been contemplated by Section 523(a)(15)(A). Therefore, it was not error for the bankruptcy judge to consider evidence of Adams' new wife's financial situation.

However, the evidence Judge Wedoff had of Adams' new wife's finances was not sufficient to support his conclusion that none of Adams' income was reasonably necessary for his own maintenance and support. Judge Wedoff relied totally upon Adams' testimony regarding his wife's finances, and Adams' knowledge was clearly limited. For example, he testified that from preparing her tax return he knew what her mortgage interest deduction on the two-flat was and from that figure he could estimate what her monthly mortgage payment was, but he also testified that he did not know exactly what her mortgage payment was. More importantly, since it was clear from Adams' testimony that he and his wife had not been married long, and that they handled their finances separately, Adams' wife might have had her own financial obligations that Adams knew nothing about that would make it necessary for Adams to contribute something towards his own support. The only way Judge Wedoff could have gotten a complete picture of Adams' new family's finances, then, would have been for him to hear evidence as to the financial obligations of the new wife.

"A trial court finding may be set aside as clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Bafia v. Northern Ind. Pub. Serv. Co.,* 993 F.2d 1306, 1308–09 (7th Cir. 1993) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Judge Wedoff's failure to take adequate evidence concerning the financial situation of Adams' new wife constituted clear error.[1]

---

1. The failure to present adequate evidence of the financial obligations of Adams' new wife could be viewed as Adams' failure since there is authority for the proposition that the debtor has the burden of proving dischargeability under either Section 523(a)(15)(A) or (B). *See, e.g., In re*

*Gantz,* 192 B.R. 932, 936 (Bankr.N.D.Ill.1996); *In re Hill,* 184 B.R. 750, 753–54 (Bankr.N.D.Ill. 1995). *But see, e.g., In re Phillips,* 187 B.R. 363, 368 (Bankr.M.D.Fla.1995) (holding that after creditor has established that debt arose out of divorce proceeding debtor only has the burden of

### III. Whether Adams' Benefit Outweighed the Detriment to Beasley

Adams contends that the bankruptcy judge erred in his determination that this was not a situation where discharging the "debt would result in a benefit to the debtor that outweighs the detrimental consequences to ... [the] former spouse," 11 U.S.C. § 523(a)(15)(B), because the determination was based on speculation rather than evidence. Judge Wedoff's decision was based on: (1) Beasley's testimony that she was barely covering her family's expenses while making $63,000.00 in her present job with the Chicago Park District, that within the next thirty days she was leaving the Chicago Park District to enroll in the Chicago Theological Seminary, and that she was negotiating with her church for the position of Chief Financial Officer at an annual salary of $45,000.00 to $50,000.00; and (2) on Adams' testimony that his wife made $55,000.00 per year, that while he was presently employed in a temporary part-time capacity with an accounting firm, making $32,000.00 per year on an annualized basis, he had recently left a $37,000.00 job to make more money, and that he was currently interviewing for $40,000.00 per year CPA jobs.

Adams argues that both Beasley's pessimism about her earnings in the near future and Adams' optimism about being offered a $40,000.00 per year job were speculation and surmise. According to Adams, to avoid basing his decision on speculation Judge Wedoff should have confined his analysis to the actual earnings of the parties at the time they gave their testimony. But the judge was not speculating when he determined what income the parties were likely to be making in the near future. He based his determination upon their testimony as to what their intentions and prospects were. Based upon this evidence, it was no more speculative to conclude that Beasley's family would soon be taking in $50,000.00 per year, while Adams' family would be taking in more than $90,000.00 per year, than it would have been to conclude, as Adams urges that the Judge should have, that Beasley would continue to earn $63,000.00 per year and that Adams would earn nothing once his temporary part-time job ended a couple of months later.

It was proper for Judge Wedoff to consider the anticipated changes in financial situation that the parties testified to because, in applying balancing tests of the type required by Section 523(a)(15)(B), bankruptcy judges must consider the "totality of the circumstances." *In re Gantz*, 192 B.R. 932, 937 (Bankr.N.D.Ill.1996); *In re Taylor*, 191 B.R. 760, 766 (Bankr.N.D.Ill.1996); *In re Carroll*, 187 B.R. 197, 201 (Bankr.S.D.Ohio 1995). Here again, however, Judge Wedoff could not have given adequate consideration to the totality of the circumstances without hearing evidence as to the personal financial obligations of Adams' new wife. The judge therefore had insufficient evidence upon which to base his determination that the benefit to Adams did not outweigh the detriment to Beasley and that decision must be reversed on that basis.

### CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is reversed and the case is remanded for further proceedings consistent with this opinion.

---

going forward); *In re Hesson*, 190 B.R. 229, 238 (Bankr.D.Md.1995) (holding that burden of proof is on debtor with respect to Section 523(a)(15)(A), but on creditor with respect to Section 523(a)(15)(B)); *In re Butler*, 186 B.R. 371, 373–75 (Bankr.D.Vt.1995) (holding that burden of proof remains on objecting creditor throughout).

However, Judge Wedoff granted Beasley's motion to amend her complaint on the day of trial. This amendment raised, for the first time, the issue of Adams' ability to pay the debt. The judge also took over the questioning of Adams regarding his ability to pay. It is understandable under these circumstances why Adams' attorney failed to thoroughly address the question of the personal expenses and financial liabilities of Adams' new wife. In any event, and for whatever reason, the record is inadequate to support a conclusion that Adams had the ability to make payments on Beasley's debt from his own income considered in connection with assistance he could reasonably expect from his new wife based on her net income.