**In re Alfred Lee CUSTER, Debtor.**

**Bonnie Lee CUSTER, Plaintiff,**

**v.**

**Alfred Lee CUSTER, Defendant.**

**Bankruptcy No. 96–62036.
Adversary No. 96–6172.**

United States Bankruptcy Court,
N.D. Ohio.

April 23, 1997.

Wylan W. Witte, Alliance, OH, for Alfred Lee Custer.

William C. Greene, New Philadelphia, OH, for Bonnie Custer.

## MEMORANDUM OF DECISION

### JAMES H. WILLIAMS, Chief Judge.

This matter is before the court on the complaint filed by Bonnie Lee Custer (Mrs. Custer), the former spouse of the debtor, Alfred Lee Custer (Debtor), to determine the dischargeability of certain debts dealt with by the parties in a separation agreement which was later incorporated into their decree of dissolution of marriage, and for the dismissal of the Debtor's chapter 7 petition. The Debtor filed an answer requesting dismissal of Mrs. Custer's complaint. The matter came on for trial following which it was taken under advisement.

## FACTS

The Debtor and Mrs. Custer were married on February 7, 1955. They were married for 31 years and together they had six children. In 1972 they moved to Ohio and the Debtor started a trucking business while Mrs. Custer raised their six children and helped to run the business from home. After several years, the business expanded from one truck to several and Mrs. Custer worked full time managing the business. In 1978 the business was incorporated as Bonniway Leasing, Inc. (Bonniway). The Debtor and Mrs. Custer were the only shareholders of Bonniway. Mrs. Custer managed the office with help from two of the parties' daughters. She generally worked seven days a week. At this time, both the Debtor and Mrs. Custer each drew $600.00 per week from the business as a salary. From 1980 to 1986 Bonniway was very profitable, and, in 1986 the company generated seven million dollars in gross revenues.

In late 1985, while Mrs. Custer was working at Bonniway, the parties separated. On June 2, 1986 they entered into a separation agreement. On September 11, 1986, the Tuscarawas County Common Pleas Court approved the parties' petition for dissolution of marriage and adopted the separation agreement.

At the time of the dissolution, Mrs. Custer was 52 years old. She remained in the marital home along with Patrick, the only minor child. Patrick had severe allergies and other medical problems. At the time of the dissolution, Mrs. Custer had no retirement savings and her only substantial work experience was from operating the office at Bonniway since 1972.[1] There were no opportunities for employment at other trucking companies in the area.

At the time of the dissolution, the Debtor was 53 years old and employed full time at his company.

Both parties were represented by counsel when the separation agreement was executed. The agreement provided that the Debtor would pay Mrs. Custer $150.00 per week as alimony for 12 years, until she reached the age of 64. It also provided that Bonniway would purchase all 80 shares owned by Mrs. Custer under a stock buyout agreement with Bonniway and the Debtor. Under that agreement, Bonniway would pay Mrs. Custer, in return for her 80 shares, a down payment of $10,000.00 and present her with a promissory note in the amount of $181,-622.70, which would be paid in installments of $450.00 per week for 12 years. The note was guaranteed personally by the Debtor. Thus, as a result of the separation agreement and stock buyout agreement, Mrs. Custer was to receive a total payment of $600.00 per week for 12 years.[2]

---

1. Early in their marriage she had worked for a short time as a legal secretary.

2. An earlier draft of the separation agreement provided that the Debtor would pay Mrs. Custer $600.00 per week in alimony and Debtor would transfer 10 shares of his stock to Mrs. Custer,

The separation agreement also provided that Mrs. Custer would have custody of Patrick and the Debtor would pay $350.00 per month for child support until Patrick reached age 18. Bonniway continued to operate profitably from 1986 through 1989. During this time, Mrs. Custer received the $600.00 per week payments.

In 1990, the Debtor created a new company to succeed Bonniway, Sequoyah Transportation (Sequoyah). The Debtor was the sole owner of Sequoyah and Sequoyah took over the obligation to make the weekly payments to Mrs. Custer.

After October 1990, the Debtor was involved in two truck leasing corporations, STO and LCT, but held no ownership interest in them. These corporations employed the Debtor and made the weekly payments to Mrs. Custer.

From August 1993 through April 1995, Mrs. Custer worked in the corporate office handling administrative matters. She was not paid for her efforts but she did continue to receive the $600.00 weekly payments.

In January 1994, the Debtor began working for his current wife, Elizabeth June (Betsy) Custer. Betsy Custer began two trucking businesses with operations very similar to Bonniway. The trucking businesses are known as Custer Trucking and Custer Leasing. Betsy Custer owns 100% of these companies. From January 1994 to the present, the Debtor has worked full time for Custer Trucking. In 1995, the Debtor did not receive a salary from Custer Trucking. In 1996, Custer Trucking had gross revenues in excess of 1.2 million dollars and the Debtor was paid a monthly salary of $1,560.00. Betsy Custer determined the amount of the Debtor's salary.

In April 1995, Mrs. Custer stopped receiving the $450.00 weekly payment. Pursuant to the stock buyout agreement, these payments were to continue through May 27, 1998. When the payments stopped, Mrs. Custer filed a contempt proceeding in the Tuscarawas County Common Pleas Court. That court found the Debtor in contempt and found he had the ability to make the pay-

 leaving Debtor with 110 shares and Mrs. Custer

ments and concealed assets to avoid making them.

In a later decision on June 24, 1996, in the same contempt proceeding, the Common Pleas Judge, citing the multiple contempts of the Debtor, ordered that he be sentenced to 30 days in jail. The judge further ordered that if Debtor paid his obligations to Mrs. Custer promptly, he would not be sent to jail.

The Debtor did not pay the amounts due to Mrs. Custer and on August 6, 1996, filed a voluntary petition for chapter 7 bankruptcy relief. Mrs. Custer initiated this adversary action on November 5, 1996, to dismiss Debtor's bankruptcy petition alleging it was not filed in good faith and to determine the dischargeability of the Debtor's obligation under the stock buyout agreement.

Mrs. Custer is now 62 years old. She has monthly living expenses in excess of $1000.00 and suffers from various illnesses which limit her ability to work. She indicated she cannot afford the cost of eye surgery to correct a double vision problem from which she suffers. She presently receives $453 per month in social security, from $600.00 to $750.00 per month from the Debtor and $100.00 rent from her son Patrick. She also receives between $75.00 to $100.00 per month for part-time work at a travel agency. Due to her financial difficulties she has had to cash in insurance policies, liquidate her small savings account and borrow money from her sister. She presently has no savings.

The Debtor is now 63 years old and has been in the trucking business since the 1950s. He is presently a dispatcher for Custer Trucking, solely owned by his present wife. His bankruptcy petition indicates Debtor has monthly income of $1,560.00. At the hearing the Debtor stated that his current wife continues to determine the amount of his salary and in 1994 and 1995 Custer Trucking made the payments for the Debtor's car. The Debtor testified that he cannot receive a large salary "because the I.R.S. is after me." In 1990 the Debtor transferred real estate to Betsy Custer by quit-claim deed and received no consideration for the transfer. The Debt-

with 90 shares.

or indicated he made this transfer on the advice of counsel.

Kevin Custer, the son of Mrs. Custer and the Debtor, testified that the Debtor was responsible for the operation of all the trucking companies including STO, LCT, Sequoyah and Custer Trucking.

In 1987 the Debtor was diagnosed with severe sleep apnea. He received treatment for his condition but claims he cannot now pass the physical test required to drive a truck. He has high blood pressure and a kidney ailment. At present the Debtor is eligible for social security benefits of $950.00 per month, but he has not applied for the benefits. In 1992 the Debtor declined an offer to run a business for an annual salary of $80,000. The Debtor was unable to state his current salary or remember terms of financial transactions related to the liabilities of Bonniway and Sequoyah. Since 1990 the Debtor has not acquired any property.

Betsy Custer testified that her companies, Custer Trucking and Custer Leasing have no equity and very little cash available after the bills are paid. Betsy Custer handles all financial matters for the companies.

### ISSUE

Is the obligation of the Debtor to pay $450.00 weekly to Mrs. Custer, pursuant to the stock buyout and separation agreements, a nondischargeable debt?

### DISCUSSION

█ The court has jurisdiction in this adversary proceeding by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

Section 523 of the Bankruptcy Code provides, in pertinent part:

(A) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ... but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5)(B).

Whether or not a debt is a support obligation or part of a property settlement is a question of federal bankruptcy law. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983). In making this determination, the court will look to all relevant evidence and any applicable state law. The evidence to be considered includes:

the nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption.

*Id.* at 1108, n. 7.

Mrs. Custer, the creditor spouse, bears the burden of proof by a preponderance of the evidence that the obligation under the stock buyout agreement is in the nature of support. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Calhoun*, 715 F.2d 1103 (1983).

### THE CALHOUN ANALYSIS

The Sixth Circuit has provided an analytical framework for determining when obligations are "actually in the nature of alimony, maintenance, or support" when they are not designated as such. *Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 518 (6th Cir.1993) (citing *Calhoun*). Under *Calhoun*, Mrs. Custer must establish four elements: (1) whether the state court or the parties intended to create an obligation to provide support; (2) whether the obligation has the effect of providing the support necessary to ensure that the daily needs of the

former spouse and any children of the marriage are satisfied; (3) whether the amount of support is so excessive as to be unreasonable under traditional concepts of support; and (4) if the entire amount of the obligation is not reasonable, what amount would be reasonable to provide the former spouse reasonable support. *Calhoun*, 715 F.2d at 1109–10. If, as an initial matter, the court does not find the requisite intent, the inquiry ends and the obligation is dischargeable. *Id.* at 1109.

## 1.

### Intent

■ The first indication of the parties' intent is the language and substance of the separation agreement. However, it is unlikely that either the parties or the state court contemplated the effect of a subsequent bankruptcy at the time the obligation arose. *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762 (3d Cir.1990). The court has reviewed the relevant documents and finds that there was no such contemplation in this case.

■ Important to the discernment of intent are the parties' relative financial circumstances at the time of the dissolution. The Debtor, in operating the trucking business, was the primary source of income during the marriage and Mrs. Custer assisted in the administrative matters. At the time of the dissolution, the parties had been married for 31 years, Mrs. Custer was 52 years old and her only work experience was handling the office for Bonniway. She was no longer employed at Bonniway, had no formal training for other employment and her earning capacity was doubtful. She had no savings and there were no prospective employment opportunities for her. She had no income beyond the alimony and stock buyout payments. She was named as the residential

parent for the Custers' one minor child, Patrick.

The Debtor was sole shareholder of Bonniway and operated the business successfully. He had a significantly higher earning capacity than Mrs. Custer.

An earlier draft of the separation agreement provided that Mrs. Custer would receive $600.00 per week as alimony, in lieu of a stock buyout agreement. The $600.00 weekly payment is the same amount that Mrs. Custer was drawing as salary for several years prior to the dissolution.

Based on the Custers' unequal earning capacities, the length of the marriage, Mrs. Custer's inability to support herself financially, and the earlier draft of the separation agreement, the court concludes that the parties intended the stock buyout agreement to provide Mrs. Custer with necessary support.

## 2.

### Present Needs

■ The second *Calhoun* factor has been labeled the "present needs" test [3]. To find the obligation to be nondischargeable, the court must find that it has the practical effect of providing the necessary support of Mrs. Custer. *Calhoun*, 715 F.2d at 1109.

The evidence indicates that Mrs. Custer has monthly expenses in excess of $1000.00 with additional expenses for food, insurance and taxes. She presently receives $453.00 in monthly social security benefits, $100.00 rent from her son and $600.00 from the Debtor ($150.00 weekly alimony payments × 4 weeks). These amounts total $1,153.00.[4] She has no savings and no funds to pay for the corrective eye surgery she needs. The additional $450.00 per week would provide necessary funds for general living expenses and particularly the medical care she needs. Thus, the court finds that the $45000 weekly

---

[3]. The "present needs" test has been criticized by many other circuit courts. *See Gianakas*, 917 F.2d 759; *Forsdick v. Turgeon*, 812 F.2d 801 (2d Cir.1987); *Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984). However, the Sixth Circuit has continued to use it to determine whether obligations that are not designated as support are nondischargeable under Section 523(a)(5). *See O'Connor, Cavanagh, Anderson, Westover, Killingsworth*

*& Beshears v. Perlin (In re Perlin)*, 30 F.3d 39 (6th Cir.1994).

[4]. The court will not consider Mrs. Custer's income from her part-time employment, as her medical condition makes even part-time employment uncertain.

payments would provide Mrs. Custer with the support she presently needs.

### 3.

### Reasonableness of Support

Under the third *Calhoun* test, the court must consider the Debtor's general ability to pay the support ordered. *Calhoun,* 715 F.2d at 1110. At the time the order of dissolution was entered, Bonniway was very profitable and the Debtor had the present and foreseeable ability to make all the payments provided for in the separation agreement. From a review of the evidence the court finds that the Debtor presently has sufficient assets, income and ability to make the $450.00 weekly payments. The decisions of the Tuscarawas Common Pleas Court and the evidence introduced at the hearing indicate that the Debtor has transferred assets apparently in an attempt to evade creditors. The Magistrate of the Common Pleas Court found the Debtor had the ability to make the stock buyout payments but had "used every means available to avoid making said payments including the creation of new corporations and the placing of all of his assets in the name of his current wife." The evidence at the hearing indicates that in 1990 the Debtor transferred his home to his current wife, without consideration. In 1990 the Debtor was involved with the truck leasing corporations, STO and LCT, and while he held no ownership interest in the corporations, they made the $600.00 weekly payments to Mrs. Custer. The Debtor currently works as a dispatcher for Custer trucking, a company solely owned by his current wife Betsy. Betsy Custer determines the amount of salary the Debtor will be paid. In 1994 and 1995 Custer Trucking made the payments for the Debtor's car. In 1996 Custer Trucking had gross revenues of $1.2 million. The Debtor testified he cannot receive a large salary from Custer Trucking "because the I.R.S. is after me."

It appears to the court that the Debtor has divested himself of assets and voluntarily reduced his salary in order to avoid paying his obligation to Mrs. Custer. While the Debtor may not own assets outright, it is clear he exercises control over the trucking companies and their cash flow which provides

him with the ability to pay the stock buyout obligation. Thus, based upon the evidence the court finds the Debtor is able to make the $450.00 weekly payments and the court cannot conclude the obligation to pay the weekly payments is so excessive that it is manifestly unreasonable under traditional concepts of support. Having so found, there is no reason to consider the fourth *Calhoun* test.

Based on the above analysis, the court concludes that the Debtor's obligation to pay the stock buyout payments, pursuant to the separation agreement, is in the nature of support and is thus nondischargeable under 11 U.S.C. § 523(a)(5).

■ Although not specifically mentioned in the complaint, both parties have addressed 11 U.S.C. § 523(a)(15) in their briefs, pretrial statements and at the trial. Even though this court has determined that the Debtor's obligation under the stock buyout agreement is in the nature of support under § 523(a)(5), the court will also address *arguendo* the facts under 11 U.S.C. § 523(a)(15).

Section 523(a)(15) excepts from discharge a debt which is:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

The majority of courts addressing the issue of burden of proof have held that the

former spouse must merely establish that the debt was incurred by the debtor in the course of a divorce or separation. Upon such showing, the burden shifts to the debtor who must show either inability to pay the debt under § 523(a)(15)(A), or that the discharge would result in benefit to the debtor that outweighs the detrimental consequences to the former spouse under § 523(a)(15)(B). *In re Wynn*, 205 B.R. 97 (Bankr.N.D.Ohio 1997); See also *In re Armstrong*, 205 B.R. 386 (Bankr.W.D.Tenn.1996); *In re Patterson*, 199 B.R. 21 (Bankr.W.D.Ky.1996); *In re Carroll*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995); *In re Phillips*, 187 B.R. 363 (Bankr.M.D.Fla. 1995); *In re Florio*, 187 B.R. 654 (Bankr. W.D.Mo.1995); *In re Hill*, 184 B.R. 750 (Bankr.N.D.Ill.1995); *In re Silvers*, 187 B.R. 648 (Bankr.W.D.Mo.1995); *In re Becker*, 185 B.R. 567 (Bankr.W.D.Mo.1995); *In re Comisky*, 183 B.R. 883 (Bankr.N.D.Cal.1995). "The courts have analyzed the terminology in Section § 523(a)(15) as creating a 'rebuttable presumption' that the divorce obligation is nondischargeable unless the Debtor proves one of the exceptions set forth in subsection (A) or (B) of Section 523(a)(15)." *Patterson*, 199 B.R. at 22.

■ This court adopts the majority view and finds that the Debtor has failed to meet his burden. As stated earlier, this court has found that the Debtor has the present ability to pay the stock buyout payments and thus § 523(a)(15)(A) does not apply to the facts of this case. Similarly, a review of the evidence indicates that a discharge of the debt would be a detriment to Mrs. Custer that would far outweigh the benefit to the Debtor. The Debtor is currently employed as a dispatcher at Custer Trucking, his current wife's company. Custer Trucking has a positive cash flow and had gross revenues in 1996 of $1.2 million. He works full time and his wife controls the amount of salary he can receive. He admitted at the hearing that he is voluntarily paid a low salary. It appears that his continued employment prospects at Custer Trucking are very good and, after receiving his discharge on his dischargeable debts, he will have additional income with which to meet this obligation.

■ Furthermore, where the Debtor has remarried the court may consider the financial circumstances of the new spouse in the balancing test of § 523(a)(15)(B). *In re Celani*, 194 B.R. 719, 721 (Bankr.D.Conn.1996). See *In re Smither*, 194 B.R. 102, 110–11 (Bankr.W.D.Ky.1996) (in order to make a determination under § 523(a)(15)(B), a court should consider current income, current expenses, current assets, current liabilities, health, job skills, training, age and education "of the debtor, objecting creditor and their respective spouses."); *In re Gantz*, 192 B.R. 932, 936–37 (Bankr.N.D.Ill.1996) (income of debtor's new spouse may not be considered in determining under § 523(a)(15)(A) whether debtor had ability to pay debt, but under § 523(a)(15)(B) "extent to which a[new] spouse's contributions or expenses impact on the debtor should be relevant in balancing the equities."). *Celani* at 721. Here, the Debtor is married to a 47 year old woman who owns two trucking companies. While her educational background was not disclosed at the hearing, she appeared very knowledgeable about the trucking businesses. She works full time at her company, Custer Trucking, and receives a salary. Her efforts at her work, and specifically in operating the two companies and employing her husband, obviously contribute to and enhance the financial ability of the Debtor to pay his obligations to Mrs. Custer. Additionally, Betsy Custer's relative youth and apparent good health will certainly be a positive factor in contributing to the Debtor's continued and future financial obligations.

In contrast, Mrs. Custer is not married, does not have the certain employment prospects of the Debtor and is not currently employed on a full time basis. Furthermore, her health condition makes future full time employment, for the unskilled 62 year old woman, highly unlikely. A discharge of the stock buyout payments would be an extreme detriment to her. Based on these facts, the court finds the Debtor has failed to meet his burden under § 523(a)(15)(B).

■ Finally, the court finds no grounds for dismissal of the Debtor's petition. Mrs. Custer has alleged in her complaint that the bankruptcy petition was not filed in good

faith and was only filed to prevent the Debtor from being jailed for contempt of the Common Pleas Court Order. The evidence does not support this allegation. The petition indicates that the Debtor has significant debt in addition to the claim owed to Mrs. Custer. See, Petition, Schedule D listing secured claims of $ $80,572.10, and Schedule E listing taxes owed to the I.R.S. of $89,787.00 for tax years 1990 through 1993.

An order in accordance with the foregoing shall issue forthwith.

## ORDER

For the reasons set forth in the accompanying Memorandum of Decision, the court finds that the obligation of the Debtor, Alfred Lee Custer, to pay $450.00 weekly to Bonnie Lee Custer, pursuant to stock buyout and separation agreements, should be declared nondischargeable and judgment rendered accordingly. The court further finds that the Debtor's petition should not be dismissed for lack of good faith.

IT IS THEREFORE ORDERED that judgment be and hereby is rendered in favor of the plaintiff, Bonnie Lee Custer and against the Debtor, Alfred Lee Custer, on her complaint to determine dischargeability.

IT IS FURTHERED ORDERED that judgment be and hereby is rendered in favor of the Debtor, Alfred Lee Custer and against the plaintiff, Bonnie Lee Custer on her complaint seeking dismissal of the Debtor's petition for lack of good faith.

IT IS SO ORDERED.