**In re Dennis Vernon BAHR
and Lorraine Bahr.**

**Jacque Johnson–Bahr, Plaintiff,**

**v.**

**Dennis Vernon Bahr, Defendant.**

**Bankruptcy No. 99–12088.
Adversary No. 99–1124.**

United States Bankruptcy Court,
N.D. Mississippi.

June 2, 2000.

Neil H. Labovitz, Southaven, MS, for debtors.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a complaint filed by the plaintiff, Jacque Johnson–Bahr, to determine the dischargeability of a debt; answer to said complaint having been filed by the defendant, Dennis Vernon Bahr; on proof in open court; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

### II.

The parties stipulated to the following facts:

1. The defendant is indebted to the plaintiff in the sum of $33,000.00 plus unpaid interest pursuant to a divorce decree and subsequent orders of the District Court of Clark County, Nevada.

2. The plaintiff and defendant were married to each other from July 13, 1990 through August 8, 1996 when they were divorced by the District Court of Clark County, Nevada.

3. This case was filed under Chapter 13 of the Bankruptcy Code by the debtor (defendant) on September 25, 1998 and was converted to a Chapter 7 case on May 10, 1999.

4. Plaintiff's Exhibit "A" is a true and correct copy of the Divorce Decree entered by the District Court of Clark County, Nevada on or about August 12, 1996.

5. Plaintiff's Exhibit "B" is a true and correct copy of a subsequent order entered by the Clark County District Court in connection with the divorce proceedings on or about April 23, 1997.

6. Plaintiff's Exhibit "C" is a true and correct copy of a subsequent order entered by the Clark County District Court in connection with the divorce proceedings on or about June 25, (24) 1997.

### III.

The indebtedness, which is the subject matter of this adversary proceeding, was initially established by the District Court of Clark County, Nevada, in a decree of divorce, entered August 8, 1996. (Plaintiff's Exhibit A) It is based on the defendant's obligation to pay one-half of a credit card debt owed by the parties and to pay one-third of the balance of an indebtedness secured by a second mortgage encumbering the residential real property owned by the plaintiff herein, Jacque Johnson–Bahr. The finite amount of the indebtedness in the sum of $33,000.00 was set forth in a subsequent order of the District Court of Clark County, Nevada, dated June 24, 1997. (Plaintiff's Exhibit C) In addition to the credit card obligation and the second mortgage obligation, the debt, which was reduced to a judgment, included interest, costs, and attorney's fees. Due to the underlying nature of the obligation and, particularly, because the decree of divorce stated "that neither party is to receive spousal support from the other," the court finds that the indebtedness is not in the nature of alimony or support. Therefore,

the question in this proceeding is whether the indebtedness should be nondischargeable under 11 U.S.C. § 523(a)(15), rather than pursuant to 11 U.S.C. § 523(a)(5).

## IV.

■ At the trial, the parties, for the first time, attempted to address the status of funds accumulated by the defendant in a 401(k) retirement plan through his former place of employment, Circus Circus Enterprises, Inc. The court advised the parties that this was not an issue in this proceeding inasmuch as it was not raised in the pleadings, and the parties had stipulated that the indebtedness in question was the $33,000.00 judgment. Previously, the District Court of Clark County, in an order dated April 22, 1997, (Plaintiff's Exhibit B), impressed a lien against this retirement account to secure the obligations owed by the defendant to the plaintiff. Later, through the order dated June 24, 1997, the court awarded full possession of the retirement account to the plaintiff. Since this occurred pre-petition through a final order of a court of competent jurisdiction, completely divesting the defendant from ownership, this court is of the opinion that the 401(k) retirement plan is not property of this bankruptcy estate. Therefore, the plaintiff may take whatever action she deems necessary to obtain possession of the funds that might be remaining in this retirement plan. She may also initiate an action to hold the defendant in contempt if he wrongfully withdrew the proceeds of said plan in violation of the aforementioned court orders.

## V.

Section 523(a)(15) of the Bankruptcy Code provides as follows:

(a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

(Hereinafter, all cited Code sections will refer to Title 11, United States Code, unless specifically noted otherwise.)

In order for a court to conclude that a § 523(a)(15) property settlement obligation, i.e., one not in the nature of alimony, support, or maintenance, is nondischargeable, two elements must be addressed:

(a) that the debtor has the ability to pay the obligation from disposable income ("ability to pay" test), or

(b) that the detrimental consequences to the non-debtor spouse outweigh the benefit of the debtor's discharge ("benefits/detriments" test).

Since all of the relevant circumstances necessary for a determination as to whether a domestic relations obligation is dischargeable or non-dischargeable are not clearly specified in the Bankruptcy Code, courts have been called upon to develop a body of case law for guidance, particularly concerning the following two significant questions:

1.  At what point in time does the court determine the debtor's "ability to pay"—at the time of the entry of the domestic relations order, at the time of the filing of the bankruptcy petition, on the date of the filing of the dischargeability complaint, or at the time of the trial?

The court in *In re Hesson*, 190 B.R. 229 (Bankr.D.Md.1995), compared the § 523(a)(15) analysis to that utilized for the determination of the dischargeability of student loans under § 523(a)(8). That court stated that this inquiry is not a historical search, but is an examination of current circumstances. Post filing events, such as either party sustaining a disabling injury or winning the lottery, could easily affect either the debtor's ability to pay the debt or affect the balance between the debtor's benefit from discharge and the detrimental consequences of that discharge to the former spouse.

The court in *In re Rappleye*, 210 B.R. 336 (Bankr.W.D.Mo.1997), took the analysis one step further, holding that the debtor's ability to pay does not necessarily mean at the time of trial, but requires the court to consider the debtor's future earning capacity.

Judge G. Harvey Boswell stated in *In re Windom*, 207 B.R. 1017 (Bankr.W.D.Tenn. 1997), that in a non-support divorce debt dischargeability proceeding, the court will measure the debtor's ability to pay as of the trial date; however, the court will not focus on a single moment in time or take a mere "snapshot" of the debtor's financial strength, but will look to the totality of the circumstances, including the debtor's future earning potential, as well as, the debtor's income as of the trial date.

More recently, the district court in *In re Cameron*, 243 B.R. 117 (M.D.Ala.1999) found that a bankruptcy judge was "clearly erroneous" in measuring the debtor's ability to pay as of the petition date rather than as of the date of the trial of the § 523(a)(15) action.

2.  Can the income of a new spouse be considered when determining the ability to pay under § 523(a)(15)(A), or when conducting the benefit/detriments test of § 523(a)(15)(B)?

In *In re Adams*, 200 B.R. 630 (N.D.Ill. 1996), the district court stated that when determining if discharging a Chapter 7 debtor's divorce debt to his ex-wife would result in a benefit to the debtor that outweighed the detrimental consequences to the ex-wife, the court, in addition to considering the anticipated changes in the parties' financial situation, should also have considered the personal financial obligations of the debtor's new wife. This includes not only the new wife's income, but also any expenses that she may be required to pay. The *In re Adams* decision was cited favorably by the Fifth Circuit in *In re Gamble*, 143 F.3d 223, 226 (5th Cir.1998).

This reasoning is followed also in *In re Smither*, 194 B.R. 102 (Bankr.W.D.Ky. 1996); *Matter of Cleveland*, 198 B.R. 394 (Bankr.N.D.Ga.1996); and *In re Custer*, 208 B.R. 675 (Bankr.N.D.Ohio 1997).

Judge Robert Krechevsky in *In re Celani*, 194 B.R. 719 (Bankr.D.Conn.1996), concluded that not only should the financial circumstances of the new spouse of the debtor be considered, but also the financial circumstances of the new spouse of the

debtor's former spouse should also be included in the determination.

In *In re Halper*, 213 B.R. 279 (Bankr. D.N.J.1997), Judge Novalyn Winfield concluded that a consideration of all income that flows into the debtor's immediate household is relevant to a determination of the debtor's ability to pay for the purpose of deciding whether the obligations should be excepted from discharge as debts not in the nature of support or alimony. The court further stated that in considering whether the benefit of the debtor's discharge outweighed the detrimental consequences to the non-debtor former spouse, that the court must consider the income of the debtor's live-in companion. *See also, In re Crosswhite*, 148 F.3d 879 (7th Cir. 1998) (Contributions of debtor's live-in girlfriend to the household should be considered when determining whether the benefit of the discharge to the debtor outweighs the detriment to the former wife.) Under these circumstances, one must presume that the court should also consider the permanency, or lack thereof, of such a relationship.

A hybrid approach can be found in *In re Gantz*, 192 B.R. 932 (Bankr.N.D.Ill.1996), where Judge Richard DeGunther held that the income of the debtor's new spouse *should not* be considered in determining the debtor's ability to pay pursuant to § 523(a)(15)(A), but the new spouse's income *should* be considered when considering whether the benefit of the discharge to the debtor outweighed the detrimental consequences to the former spouse under § 523(a)(15)(B), given the balancing of equities required in the latter determination.

## VI.

■ The court will first address the defendant's ability to pay the aforesaid domestic relations judgment. The defendant indicated that he now works as a floor supervisor at the Horseshoe Casino. His weekly take home pay is $480.00, which includes deductions for federal income taxes, state income taxes, and medical insurance. This weekly net pay, calculated on a monthly basis, amounts to $2,078.40. ($480.00 × 4.33 weeks per month).

The defendant testified that he has undergone two previous open heart surgeries for coronary aneurysms, and anticipates a third surgery in the foreseeable future. To monitor the condition of a current aneurysm, the defendant is required to undergo an MRI (Magnetic Resonance Imaging) examination every six months. At the time of the filing of his bankruptcy petition, the defendant was married to the above captioned co-debtor, Lorraine Bahr. His original schedules reflected that he was unemployed, but that his wife was earning a net salary of $1,647.52 per month. As noted above, the defendant is now employed, but he and his wife have now separated and they are living apart. Consequently, the court will not take into account the earnings of Lorraine Bahr when applying the "ability to pay" test or the "benefits/detriments" test.

The defendant's schedules indicate that he is liable on a student loan obligation which may or may not be dischargeable in this bankruptcy case. The amount of this indebtedness is listed as $8,577.00. The defendant testified that the student loan creditor has demanded that he repay this obligation at the rate of $500.00 per month. This court is of the opinion that a payment in this amount is very problematic, if not completely unworkable. The court cannot simply ignore the student loan obligation when conducting its analyses in this adversary proceeding. However, there are several factors, which could dramatically affect the repayment of the student loan obligation, that could best be described as "uncertainties" at this point in time. Hav-

ing heard the testimony, the court considers the following to be reasonable monthly expenses for the defendant:

| | |
|---|---:|
| Prescription drugs | $ 125.00 |
| Doctor visits | 150.00 |
| Rent | 600.00 |
| Automobile payment | 195.00 |
| Utilities | 200.00 |
| Gasoline and automobile maintenance | 50.00 |
| Automobile insurance | 75.00 |
| Dry cleaning | 30.00 |
| Clothing allowance | 50.00 |
| Food | 250.00 |
| Contingencies | 100.00 |
| Total | $1,825.00 |

The aforesaid amount does not include any payment which would be applicable to the student loan obligation. Excluding this obligation, the debtor would have disposable income of $253.40 each month. ($2,078.40 less $1825.00) Therefore, the ultimate treatment of the student loan obligation will have a profound effect on the defendant's ability to pay the domestic relations judgment.

From the evidence presented, the court finds that the plaintiff's household earnings should be considered as follows:

| | |
|---|---:|
| Income: | |
| Plaintiff's rental income | $1,148.87 |
| Present husband's income ($431.00 weekly net pay × 4.33 weeks per month) | 1,866.23 |
| Total | $3,015.10 |

The plaintiff indicated that her mother resides with her and has a monthly income in the sum of $547.00 from social security benefits. The plaintiff's mother, however, contributes nothing toward the expenses of the household. Perhaps, a modest amount of this monthly income should be attributed to the plaintiff's monthly earnings, but, without further information, the court is reluctant to make such an application at the present time.

The following should be considered as reasonable monthly expenses for the plaintiff and her present husband:

| | |
|---|---:|
| Mortgage expense | $ 723.27 |
| Food | 300.00 |
| Utilities | 300.00 |
| Water | 25.00 |
| Cable television | 36.78 |
| Telephone | 35.00 |
| Clothing allowance | 50.00 |
| Automobile insurance | 75.00 |
| Contingencies | 200.00 |
| Total | $1,745.05 |

Even if the monthly income of the plaintiff's mother is totally excluded, the plaintiff has monthly disposable income in the amount of $1,220.05 ($3,015.10 less $1,745.05). This is a very favorable number when compared to the disposable income, without considering the payment of the student loan obligation, of the defendant. The court also notes that although the plaintiff is currently unemployed, she is capable of earning a livelihood and has recently attempted to seek employment through her culinary union, but, unfortunately, without success. The court perceives that the plaintiff will obtain gainful employment at some time in the foreseeable future, thus increasing her monthly income.

Regardless of the foregoing, however, this court is of the opinion that the defendant's payment of the student loan obligation should first be determined before a decision is rendered in the present adversary proceeding. The student loan obligation should be considered *simultaneously* with the domestic relations judgment owed to the plaintiff. Because of the status of the case law, they stand somewhat "on equal footing." Therefore, the court directs the defendant's attorney to file a complaint within thirty days of the date of this opinion so that the court can determine the dischargeability of the student loan debt, as well as, at the same time determine the dischargeability of the debt

herein. If the defendant elects not to file this complaint, the court will not consider the student loan obligation in this proceeding as a debt owed by the defendant. This matter will be held in abeyance until this issue can be finally concluded with all the relevant issues appropriately before the court.

## VII.

As guidance to the parties in this proceeding, as well as, the possible adversary proceeding to be initiated against the student loan creditor, the court would point out the following concerning § 523(a)(15)(A)'s "ability to pay" test:

By its language, § 523(a)(15)(A) expressly allows a debt to be discharged if the debtor does not have the ability to pay the debt. However, courts have split on the issue of what to do when a debtor cannot pay the debt *in full,* but can pay a significant portion of the debt over time. One line of cases holds that § 523(a)(15)(A) is an "all or nothing" proposition which requires discharge unless the debtor can pay the debt in full. A contrary approach holds that a court can "partially discharge" a debt under § 523(a)(15)(A)—discharging only that portion that the debtor cannot pay.

The following discussion was extracted from an article written by Derrick R. Bolen, law clerk to Judge Thomas F. Waldron (S.D.Ohio), Norton Bankruptcy Law Adviser, January, 1997, entitled "Partial Discharge under § 523(a)(15)(A): One Facet of a Paving Stone from Hades":

The first case to address the issue of partial dischargeability under § 523(a)(15)(A) was *Comisky v. Comisky (In re Comisky),* 183 B.R. 883 (Bankr.N.D.Cal.1995). The debtor in *Comisky* owed his ex-wife nonsupport debts imposed by their marital settlement agreement. Although the debt-

or did not have the ability to pay the entire debt to his ex-wife, the court found that he could pay part of the debt over a reasonable time. *Comisky,* 183 B.R. at 884. The question then became whether the court was constrained to discharge the debt completely since the debtor did not have the ability to pay the entire debt, or whether the court could "fashion an equitable remedy whereby part of the debt is discharged and part is not." *Id.*

Noting similarities between § 523(a)(8) and § 523(a)(15), the court adopted the partial discharge approach taken in the student loan discharge case *Gammoh v. Ohio Student Loan Comm'n (In re Gammoh),* 174 B.R. 707 (Bankr. N.D.Ohio 1994). *Comisky,* 183 B.R. at 884. In *Gammoh,* the court held that while repaying the student loans in full would be an undue hardship on the debtors under § 523(a)(8), it would not pose an undue hardship for the debtors to repay a part of the loans, and therefore, only the part that would cause an undue hardship was dischargeable. *Gammoh,* 174 B.R. at 711–12. Applying the same rationale to § 523(a)(15)(A)'s ability to pay requirement, the *Comisky* court held that the debtor had the ability to pay approximately forty percent of his obligation to his ex-wife in monthly installments, and the remaining sixty percent of the obligation would be discharged. *Comisky,* 183 B.R. at 884.

The *Comisky* partial discharge approach was adopted and refined by *In re Smither,* 194 B.R. 102 (Bankr.W.D.Ky.1996). The *Smither* court first considered the extreme positions produced by a literal reading of § 523(a)(15)(A). Where an obligation to an ex-spouse is currently due, "a Mechanical reading of [§ 523(a)(15)(A)] could result in the dis-

charge of this obligation since the Debtor cannot pay it, in full, his presently available excess income and assets[,]" but "[b]y the same logic, a mere mathematical possibility that a debt could be paid in full over many years due to the existence of a small amount of excess income in relation to the (a)(15) debt is also not the correct interpretation of [§ 523(a)(15)]." *Smither*, 194 B.R. at 109. Flatly rejecting this "all or nothing" analysis, the *Smither* court instead looked for guidance to *Comisky* and to *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), *cert. denied*, [513 U.S. 1081,] 115 S.Ct. 731, 130 L.Ed.2d 634 (1995). In *Cheesman*, the bankruptcy court granted Chapter 7 debtors an undue hardship discharge of their student loans, but decided to withhold its final order of nondischargeability for eighteen months, at which time it would review the debtors' situation to see if a discharge was still warranted. *Cheesman*, 25 F.3d at 359. The Sixth Circuit held on appeal that the bankruptcy court had properly exercised its equitable authority under § 105 stating that "the [bankruptcy] court appropriately attempted to balance the Bankruptcy Code's goal of providing a fresh start to the [debtors] with Congress's goal of preventing abuse of the student loan program." *Cheesman*, 25 F.3d at 361. The *Smither* court held that the *Cheesman* analysis was equally applicable to cases under § 523(A)(15)(A) and adopted the partial discharge approach. *Smither*, 194 B.R. at 109–10. Specifically, the *Smither* court held

> that a Debtor has the ability to pay an obligation for purposes of 11 U.S.C. § 523(a)(15)(A), if the Debtor has sufficient disposable income to pay all or a material part of a debt within a reasonable amount of time. If the Debtor has the ability to pay only a portion of that indebtedness, then the court may discharge in part and/or equitably modify the obligation in question.

*Smither*, 194 B.R. at 110. (For an interesting variation on the partial discharge approach, see *Greenwalt v. Greenwalt (In re Greenwalt)*, 200 B.R. 909 (Bankr. W.D.Wash.1996) where a partial discharge result was reached under § 523(a)(15)(A) without analogy to § 523(A)(8) by individually analyzing the multiple obligations which made up the debtor's total debt to the ex-spouse.) The obvious counter argument to the partial discharge approach was succinctly stated in *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760 (Bankr.N.D.Ill. 1996), *aff'd*, 1996 U.S.Dist. LEXIS 9734 [199 B.R. 37] (N.D.Ill. July 10, 1996):

> Most cases follow the all or nothing approach. The statute makes no provisions for determining that a part of a debt may be found dischargeable, but the remainder nondischargeable. Thus, the Court declines to follow the *Comisky* approach and attempt to forge an equitable middle ground in this matter. The morass of § 523(a)(15) is difficult enough to judicially navigate and Congress needs to provide much needed legislative remediation.

*Taylor*, 191 B.R. at 766. The court in *Collins v. Florez (In re Florez)*, 191 B.R. 112 (Bankr.N.D.Ill.1995), also specifically rejected the *Comisky* partial discharge approach, noting that: "The concept of a fresh start is amply challenged by application of Section 523(a)(15)(A). There is no doubt that ... the Court is forced to apply Section 523(a)(15)(A) in a way which nickels and dimes the Debtor." *Florez*, 191 B.R. at 116. The position of the all or nothing courts is attractively simple and true to the

Supreme Court's recent preference for plain meaning. Congress knows how to make an obligation partially dischargeable when it intends such a result, and even did so in § 523(a)(15)'s parallel section, § 523(a)(5), which provides that a support debt is nondischargeable "but not to the extent that" the debt is assigned to another entity or is not in the nature of support. 11 U.S.C. § 523(a)(5).

In contrast, nothing in § 523(a)(15) expressly authorizes a court to partially discharge a debt. It can even be argued that the Code already provides for a partial discharge of § 523(a)(15) obligations to deserving debtors since these obligations are dischargeable in Chapter 13. *See In re Auld,* 187 B.R. 351 (Bankr.D.Kan.1995).

Although § 523(a)(15) does not expressly authorize a partial discharge approach, neither does it mandate an all or nothing approach. *McGinnis v. McGinnis (In re McGinnis),* 194 B.R. 917, 921 (Bankr.N.D.Ala.1996). As alluded to by the *Smither* Court, the all or nothing approach could lead to inequitable results such as a debtor obtaining a complete discharge of a § 523(a)(15) debt although he can pay some, perhaps even a major portion, of the debt. Since § 523(a)(15) balances competing policy considerations in much the same manner as § 523(a)(8), *Cheesman* is an indication from the circuit level that this is exactly the type of situation in which bankruptcy courts should consider exercising their § 105(a) authority.

In this imperfect statutory environment, the *Smither* formulation—that a debtor need only be able to pay a material amount of the debt over a reasonable time—is the most equitable, and arguably the most workable, solution thus far to the § 523(a)(15)(A) ability to pay quagmire. To borrow from *Cheesman's analysis, the Smither* approach appro-

priately balances the debtor's need for a fresh start against the countervailing policy that debtors should not be able to use bankruptcy as a means of avoiding their nonsupport divorce-related obligations.

Regardless of which of the above approaches one believes correct, the poor drafting of § 523(a)(15)(A) guarantees continued controversy. This section badly needs the attention of Congress in the long run, and in the meantime, the Courts of Appeals will have to give guidance circuit by circuit. Until such direction is given, § 523(a)(15) is destined to hold a place of distinction in "the region of Hades reserved for litigation nightmares." *Smither,* 194 B.R. at 106.

### VIII.

An order will be entered consistent with this opinion.