**In re Jennifer SIMPSON, Debtor.**

**James Dale Simpson, Plaintiff,**

**v.**

**Jennifer Simpson, Defendant.**

**Bankruptcy No. 04–50880.**
**Adversary No. 04–05040.**

United States Bankruptcy Court,
W.D. Kentucky,
Paducah Division.

Jan. 24, 2006.

Todd A. Farmer, Stout and Farmer, Paducah, KY, for Debtor.

---

### MEMORANDUM–OPINION

THOMAS H. FULTON, Bankruptcy Judge.

THIS ADVERSARY PROCEEDING is before the Court on Plaintiff's Complaint to Determine the Nondischargeability of Debt. Plaintiff James Dale Simpson (Plaintiff) is before the Court seeking a determination that the debt for a 2002 Hyundai Santa Fe (Hyundai) assigned to Defendant Jennifer Simpson (Defendant) during their divorce is nondischargeable under 11 U.S.C. § 523(a)(15). Based upon the sworn testimony of witnesses and statements of counsel at trail, and the entire record in this case, the Court finds that the debt in question is nondischargeable under 11 U.S.C. § 523(a)(15).

### Findings of Fact

The Plaintiff and Defendant were divorced in March 2004. Per their divorce, the parties entered into a Settlement Agreement in which, as relevant here, the Defendant was granted the Hyundai Santa Fe and agreed to hold the Plaintiff harmless on the debt.

The Defendant filed for Chapter 7 Bankruptcy relief on June 22, 2004. The Defendant's bankruptcy petition does not list the Plaintiff as a Creditor nor is he included on the Mailing Matrix, although he is listed on Schedule H as a Co–Debtor. The Defendant filed the present action on October 1, 2004, to determine the dischargeability of the Hyundai Santa Fe.

The Plaintiff remarried in August 2004 and currently resides with his new wife and her three daughters from a previous marriage. The Plaintiff is employed as a truck driver for Mid West Terminal, earning $1,803.63 net monthly. Plaintiff was on temporary disability at the time of the evidentiary hearing in February 2004 and his disability insurance provided him with only $1,100.00 a month net income. At the evidentiary hearing the Plaintiff represented to the Court that he anticipated returning to work full time in March 2004. Although the Court has not been given an update on the Plaintiff's employment, based upon the representations made at the evidentiary hearing this Court will as-

sume that the Plaintiff has resumed work and is now earning his historical salary of $1,803.63 net per month. Plaintiff's wife is employed as a Registered Nurse (RN) and earns $3,075.00 net monthly, plus $954.00 child support for her minor daughters. The Plaintiff's household expenses are approximately $5,997.16. The Plaintiff and his wife have assets of approximately $238,500.00, including a home, four cars, pensions and household goods. Their current liabilities are approximately $197,467.99, of which $140,000.00 are the first and second mortgages on their home with the remaining $57,467.99 attributable to automobiles and credit card debt. The Plaintiff is 44 years old and a high school graduate. Aside from his hip replacement surgery, he is in good health. The Plaintiff's wife is 42 years, a college graduate and in good health. The Plaintiff has two children, ages 9 and 13, from his marriage to the Defendant, of whom he shares joint custody. The children primarily reside with their mother, and the Defendant pays child support of $563.20 per month and is responsible for 64% of the children's medical expenses. Both children have ADD and take medication regularly. As stated above, the Plaintiff's wife has three daughters who reside with them, and she receives approximately $954.00 in child support. There is no bar to the Plaintiff seeking individual bankruptcy relief. The Plaintiff's wife received a Chapter 7 discharge in March 2003 and, therefore, would not be eligible for bankruptcy relief.

The Defendant also remarried in August of 2004, and currently resides with her new husband and the two children from her marriage to the Plaintiff. The Defen-dant is employed as an office clerk with the Opthomology Group, Paducah Kentucky, where she earns $1,166.00 net per month, plus $563.20 per month for child support. The Defendant's husband is employed as a journeyman/lineman with Jackson Purchase Energy Corporation where his base salary is $3,168.00 net per month. During the evidentiary hearing it was elicited through testimony that the Defendant's husband has historically earned a great deal of overtime and his gross earnings were $75,105.72 in 2004, $69,607.00 in 2003, and $66,655.00 in 2002. Although unable to put an exact figure on his average monthly salary after overtime, this Court finds that he earns on average approximately $4,000.00 net per month. The Defendant and her husband's expenses are approximately $5,569.00 per month.[1] The Defendant and her husband have assets totaling approximately $1,435.00, consisting primarily of household goods, and a van, worth approximately $14,000. The Defendant had $20,305.00 in unsecured nonpriority debt discharged in her Chapter 7 bankruptcy. Additionally, her home, which was secured by a mortgage, was sold at foreclosure and the outstanding mortgage was satisfied in full. The Defendant also owned a Hyundai Santa Fe, which was repossessed and resulted in a deficiency of $6,647.13, and is the subject of the present proceeding. Defendant is 34 years old, has a high school education and is in good health. The Defendant's husband is 36 years old, has a high school education, and is in good health. As stated above, the two children from the parties' marriage reside with Defendant and her husband. The Defen-

---

1. The Court has not received any new information regarding the Defendant's housing situation. At the evidentiary hearing in February 2005, the Defendant estimated that it would cost approximately $900 per month for rent or purchase of a home. As no new information has been forwarded to the Court, it will assume that this estimate was correct and the Defendant and her spouse are spending approximately $900 per month on housing.

dant's husband also has three children from a previous marriage, nine year old Cory, who takes medication for heart disease, and 5 year old twins Max, who takes medication for ADHD, and Lyndsey, who takes medication for a sleep disorder. The three children live with their mother, and the Defendant's husband pays child support of $1,382.33 monthly as well as spousal maintenance of $500.00 a month.

At the evidentiary hearing both parties testified as to the their financial condition and the events leading up to the Defendant's Chapter 7 bankruptcy filing. The Plaintiff testified that he did not know that the Defendant could not make the payments on the Hyundai nor did he know that she filed for bankruptcy protection. Plaintiff purchased an automobile shortly after the divorce, and he testified that had he known that Defendant was not able to reaffirm the Hyundai, he would have taken the Hyundai from the Defendant and made the payments. The Plaintiff testified, however, that she had apprized the Plaintiff of her difficulties in paying her bills and that he was aware she was planning on filing for bankruptcy protection.

### Conclusions of Law

The issue before the Court is whether the Defendant may discharge the $6,647.13 deficiency resulting from the repossession and sale of the Hyundai Santa Fe. This matter is controlled by 11 U.S.C. § 523(a)(15), which states that a discharge does not apply to any debt that is

...not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation...unless the

(A) the debtor does not have the ability to pay..; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse...

■ The application of this code provision involves a rather detailed analysis. To begin, the creditor-plaintiff bears the burden of showing that (1) the debt in question is not a nondischargable debt under § 523(a)(5), and (2) the debt was incurred in the course of a divorce or separation or in connection with a divorce or separation. *In re Smither,* 194 B.R. 102, 107 (Bankr.W.D.Ky.1996).

At the evidentiary hearing both parties agreed that this was a 11 U.S.C. § 523(a)(15) action. Both parties agreed that this was a not a debt related to maintenance or support, and that the debt was incurred in the course of their divorce.

■ As the parties agreed to the nature and source of the debt, the burden shifts to the Defendant to show that she is either (1) unable to pay the debt or (2) a discharge of the debt would result in a benefit to the debtor that outweighs any detrimental consequences to the creditor-spouse. *In re Smither,* 194 B.R. at 107. Typically a creditor/plaintiff bears the burden of proving all elements of an exception to discharge, but § 523(a)(15) allows a debtor/defendant to counter the creditor/plaintiff's proof with certain statutory defenses. This means that after the creditor spouse has satisfied the above 2–prong test, the debtor-spouse bears the burden of going forward with the above-stated defenses. *Id.* Although the debtor must go forward with the defenses, both the debtor and the creditor must present evidence regarding the ramifications to each of them if a discharge is either granted or denied. *Id.*

■ The Court must first look to see if the debtor is able to pay the debt in issue. According to *Smither,* the Court must consider: (1) the amount of debt sought to be held nondischargeable; (2) the debtor's

current income and the value and nature of any property retained after the bankruptcy filing; (3) the amount of reasonable and necessary expenses the debtor must incur for his support and the support of his dependents; and (4) a comparison of the debtor's property and current income with his reasonable and necessary expenses. *Smither*, 194 B.R. at 108.

As stated above, the Defendant is seeking to have the $6,647.13 deficiency balance owed on her Hyundai discharged. The Defendant's income is $1,166.00 net per month plus $536.20 for child support, and her husband earns approximately $4,000.00 net per month. The Defendant's family incurs approximately $5,569.00 per month in household expenditures. It appears that the Defendant has excess income of approximately $133.00 per month. While this shows that the Defendant does have excess income each month, the analysis is not complete.

■ Defendant may also raise the defense that a discharge would result in a personal benefit to her that would outweigh the detriment to the plaintiff. *Smither*, 194 B.R. at 110. Both defendant and plaintiff must offer evidence concerning the effects that a discharge would have on their lives. Essentially, the Court is asked to compare the respective standard of living of both parties and determine who will "suffer more" if there is a discharge. *Id.* If the defendant's standard of living would be equal to or better then the plaintiff's if the debt were not discharged then the debt should be deemed nondischargable. If, on the other hand, the defendant's standard of living would fall materially below the plaintiff's standard of living, then the Court should discharge the debt. *Id.* In making the determination as to standard of living, the Court should, at a minimum, consider the following in regards to both parties: (1) amount of debt involved,

including payment terms; (2) current income; (3) current expenses; (4) current assets, including any exempt assets; (5) current liabilities, excluding those discharged in bankruptcy; (6) health, job skills, training, age and education; (7) Debtor's dependents, notably their ages and special needs; (8) any financial changes that have occurred since the divorce to either party; (9) the amount of debt discharged in bankruptcy; (10) if the creditor may seek relief under the Bankruptcy Code; and, (11) if both parties have acted in good faith throughout the course of the bankruptcy and the litigation concerning the 11 U.S.C. 523(a)(15) issue. *Id.* at 111. The above list is simply a starting point, and the court may consider other factors it deems relevant. *Id.*

■ The total of the debt in question is $6,647.13 for the deficiency on the Hyundai. An analysis of the Defendant's financial and life circumstances will be considered first, followed by an examination of the Plaintiff's circumstances.

As stated previously, the Defendant and her husband are currently earning approximately $5,702.00 net income per month. On a monthly basis, the Defendant has expenses of approximately $5,569.00. The Defendant and her spouse own household goods with an approximate value of $1,435, as well as a van, owned by Defendant's spouse and used by the Defendant, worth approximately $14,000.00. Following her bankruptcy discharge, the Defendant's only remaining liabilities are $120.00 per month for reaffirmed wedding bands, a car payment of $412.38 for the van, a $100 per month payment on a credit card in Defendant's husband's name, and a $22.50 monthly payment for a musical instrument rental for Defendant's son. Both Defendant and her husband are in their early 40s, have high school educations, enjoy good health, and have stable careers. The

Defendant has two children who reside with her, and for whom she receives child support. The children are in relatively good health, although both are on medication for ADD. The Defendant's husband has three children from a previous marriage to whom he provides child support.[2] The Defendant's children are in relatively good health, although all are on daily medication. The Defendant's income and expenses have remained relatively stable since the time of the divorce. The only major factor, the foreclosure on the home, did not result in a deficiency and the Defendant factored in the cost of finding replacement housing in the budget information she provided to the court. As stated earlier, because the Defendant has not provided the court with supplemental information regarding her housing situation this Court is assuming that the estimated costs proved to be accurate and the expenses submitted are, in fact, the actual expenses incurred by the Defendant on a monthly basis. In addition to the house, the Defendant received a discharge of $20,305.00 in unsecured nonpriority debt.

The Plaintiff and his wife are currently earning a net monthly income of $5,832.63, and have monthly expenses of $5,997.16. The Plaintiff and his wife own a home, valued at $140,000.00, four cars, valued at $51,000.00, pensions, valued at $42,500.00, and various household goods, valued at $5,000.00. His household liabilities include a first and second mortgage on the home, totaling $140,000.00, car loans, totaling $35,058.99, and various consumer credit cards, totaling $22,409.00. The Plaintiff is 44 years old, a high school graduate, and employed as a truck driver. He has a hip replacement last year that required him to go on disability for a period of time, but is in relatively good health. The Plaintiff's wife is 42, a college graduate, is employed as a RN, and enjoys good health. The Plaintiff has two children with the Defendant, as mentioned above, for whom he pays child support. The Plaintiff's wife has three daughters who reside with her and the Plaintiff for whom she receives child support. The Plaintiff's wife received a Chapter 7 bankruptcy discharge in March 2003 and, therefore, is not eligible for bankruptcy relief. The Plaintiff is, however, eligible for relief through the bankruptcy code.

The final consideration for both the Plaintiff and the Defendant is whether they acted in good faith throughout this dischargeability action. The Court notes that there was conflicting testimony at the evidentiary hearing as to whether the Plaintiff was aware the Defendant was going to seek bankruptcy relief. Further, the Defendant's husband was not as forthright as required by this court in regards to his average monthly income. This is a court of equity and it is difficult to reach a just result if the Court does not feel that the parties were fully candid with the Court. That being said, this Court finds that both parties acted in good faith in regards to the bankruptcy litigation and the litigation of the 11 U.S.C. § 523(a)(15) issue.

While the above list of factors is not exhaustive, it does give some indication of the financial situations of both parties. Based on the information provided to this Court, it cannot find that the Defendant's standard of living would fall materially below that of the Plaintiff if a discharge were not granted. While the Plaintiff has more assets than the Defendant, he also has a corresponding amount of liabilities that the Defendant does not have following her bankruptcy discharge. Both parties have a very small margin of excess income each

**2.** The child support paid by Defendant's husband is factored into their monthly expenses.

month, and requiring the Defendant to pay back the relatively small deficiency balance on the Hyundai would not cause her standard of living to fall materially below the Plaintiff's standard of living.

■ The Court further realizes, however, that it would be virtually impossible for the Defendant immediately to satisfy the debt in full. There is no "all or nothing" requirement that either the debt be paid as originally set out or not at all. *In re Smither,* 194 B.R. at 109. This court may either partially discharge or equitably modify the debt under 11 U.S.C. § 523(a)(15). *Id.*

■ Exercising this discretion, this Court finds that the Defendant should not receive a discharge as to the deficiency balance of $6,647.13 owed on the Hyundai. This court finds that the debt on the Hyundai Santa Fe in the amount of $6,647.13 is NONDISCHARGEABLE. This Court further finds that the Defendant shall pay said amount to the Plaintiff as follows: Monthly installment payments of $100 a month beginning March 2006. The payments are to be in possession of the Plaintiff by the 15th of each month, and paid in such monthly payments until the debt is paid in full. If paid on time, no interest will be incurred. Any failure of the Defendant to deliver these payments timely to Defendant will result in the debt accelerating and becoming due in full, bearing interest at the currently applicable federal judgment interest rate of 4.41% per annum.